Michael L. Rosenbaum, OSB No. 760267
E-mail: mikelaw100@yahoo.com
Travis J. Mayor, OSB No. 053210
E-mail: tjm@rosenbaumlitigation.com
Law Offices of Michael L. Rosenbaum
1826 NE Broadway
Portland, OR 97232
Telephone No.: (503) 288-8000
Fax No.: (503) 288-8046

Of Attorneys for Plaintiffs Thomas Glenn and Patsy McKinney

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THOMAS GLENN; and PATSY McKINNEY, | Case No.: 11-CV-00402-KI |
| Plaintiffs, | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| CITY OF PORTLAND, a Public body, | |
| Defendant. | |

Plaintiffs Thomas Glenn and Patsy McKinney submit the following memorandum of law

in support of Plaintiffs' Motion for Partial Summary Judgment.

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ 1

**STATEMENT OF FACTS** ................................................................................. 3

**SUMMARY JUDGMENT STANDARD** ........................................................ 8

**LEGAL ARGUMENT** ....................................................................................... 8

I. PPB Officers did not have Plaintiffs' Consent to Enter and Search Plaintiffs' Home ..9

II. PPB Officers' Warrantless Entry and Search of Plaintiffs' Home was Unconstitutional as a Matter of Law...........................................................13

 A. Warrantless Entries and Emergency Aid Exception.............................................14

 B. The PPB Emergency Entries Policy is Facially Unconstitutional .........................15

 C. The PPB's Emergency Entries Policy as Applied in this Case was Unconstitutional ..............................................................................................19

  1. The Initial Entry and Search of the Main Floor was Unconstitutional ...........20

  2. The Entry and Search of the Second Floor was Unconstitutional ..................23

  3. Both Searches were made Pursuant to the PPB's Emergency Entries Policy...............................................................................25

  4. Subsequent Reviews Found the Officers' Search of Plaintiffs' Residence Unconstitutional .......................................................26

  5. Defendant Acted with Deliberate Indifference to a Known Risk that the Emergency Entries Policy was Unconstitutional........................28

III. As a Matter of Law, the PPB Officers Trespassed on Plaintiffs' Property Because their Entry and Search of Plaintiffs' Home was Unconstitutional ...............29

IV. As a Matter of Law, Plaintiffs are Entitled to Summary Judgment on their Claims for False Arrest and False Imprisonment .......................................................30

 A. The Arrest and Detention of Plaintiff Thomas Glenn was Unlawful ....................31

 B. The Arrest and Detention of Plaintiff Patsy McKinney was Unlawful .................33

V.    As a Matter of Law, Plaintiffs are Entitled to Summary Judgment
      on their Claims for Battery ............................................................................33

**CONCLUSION** ........................................................................................................34

## TABLE OF AUTHORITIES

### Cases Cited

*Bakker v. Baza'r, Inc.,* 275 Or. 245, 551 P.2d 1269 (1976) .....................................33,34

*Boyer v. Anduiza,* 90 Or. 163, 175 P. 853 (1918) ........................................................29

*Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788,
      20 L.Ed.2d 797 (1968) ...........................................................................................10

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d
      265 (1986) .................................................................................................................8

*Cook v. Kinzua Pine Mills, Co.,* 207 Or. 34, 293 P.2d 717 (1956) ..............................33

*Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515,
      164 L.Ed.2d 208 (2006) .........................................................................................12

*Gymnastics USA v. McDougal,* 92 Or. App. 453, 758 P.2d 881 (1988)......:.................29

*Hiber v. Creditors Collection Service,* 154 Or. App. 408,
      961 P.2d 898 (1998).................................................................................................31

*Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ..................9

*Kraft v. Montgomery Ward & Co.,* 20 Or. 230, 348 P.2d 239 (1959) ..........................31

*LaLonde v. County of Riverside,* 204 F.3d 947 (9th Cir. 2000).....................................14

*Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018,
      56 L.Ed.2d 611 (1978) ...........................................................................................13

*Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371,
      63 L.Ed.2d 639 (1980) ...........................................................................................14

*Rich v. Cooper,* 234 Or. 300, 380 P.2d 613 (1963) ......................................................34

*Rhodes v. Harwood,* 273 Or. 903, 544 P.2d 147 (1975)...............................................29

*Ross v. City of Eugene,* 151 Or. App. 656, 950 P.2d 372 (1997) ............................................30,31

*Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ...............10,11

*Smith v. Duncan,* 297 F.3d 809 (9th Cir. 2002)...................................................................26,27

*State v. Bridewell,* 306 Or. 231, 759 P.2d 1054 (1988) .......................................................20, 25

*State v. Burdick,* 209 Or. App. 575, 149 P.3d 190 (2006) .........................................................21

*State v. Christenson,* 181 Or. App. 345, 45 P.3d 511 (2002) ................................................19,20

*State v. Davis,* 295 Or. 227, 666 P.2d 802 (1983) ......................................................................25

*State v. Fredricks,* 238 Or. App. 349, 243 P.3d 97 (2010) ...................................................20, 21

*State v. Follett,* 115 Or. App. 672, 840 P.2d 1298 (1992) ....................................................20,30

*State v. Martin,* 222 Or. App. 138, 193 P.2d 208,
    *rev. den.,* 345 Or. 690 (2008)............................................................................11,19,26

*State v. Pierce,* 226 Or. App. 336, 203 P.3d 343 (2009) .............................................................20

*State v. Salisbury,* 223 Or. App. 516, 196 P.3d 1017 (2008)................................................19,20

*State v. Stevens,* 311 Or. 119, 806 P.2d 92 (1991)..............................................................9,29,30

*State v. Torres,* 198 Or. App. 218, 108 P.3d 69 (2005) ..............................................................25

*Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)..........................14

*United States v. Bautista,* 362 F.3d 584 (9th Cir. 2004)..............................................................12

*United States v. Cervantes,* 219 F.3d 882 (9th Cir. 2000).......................................................15,18

*United States v. Chan-Jimenez,* 125 F.3d 1324 (9th Cir. 1997) .............................................10,12

*United States v. Connor,* 127 F.3d 663 (8th Cir. 1997) ..............................................................12

*United States v. Impink,* 728 F.2d 1228 (9th Cir. 1984) ..............................................................10

*United States v. Lai,* 994 F.2d 1434 (9th Cir. 1991).....................................................................14

*United States v. Murphy,* 516 F.3d 1117 (9th Cir. 2008)..........................................................12,13

*United States v. Patacchia,* 602 F.2d 218 (9th Cir. 1979) ...........................................................10

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*
    971 F.2d 244 (9th Cir. 1992) ..........................................................................27

*United States v. Shaibu,* 920 F.2d 1423 (9th Cir. 1990) ......................................10,11

*United States v. Winsor,* 846 F.2d 1569 (9th Cir. 1988).............................................12

*Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091,
    80 L.Ed.2d 732 (1984) ....................................................................................9

*Wood v. Ostrander,* 879 F.2d 583 (9th Cir. 1990).......................................................8

## Statutes

42 U.S.C. § 1983.......................................................................1,8,13,18,24,29

ORS 131.005(11)....................................................................................32

ORS 133.033.......................................................................1,16,17,19

ORS 153.076..........................................................................................32

ORS 162.235..................................................................................2,31,32

ORS 162.247.....................................................................................2,31

Fed. R. Civ. P. 56......................................................................................8

F.R.E. 201 ..............................................................................................26

## Other Authority

U.S. Const. amend. IV. .................................................8,9,14,15,17,29,32,33

Or. Const. art. I, § 9. ...................................................8,9,29,30,32,33

# INTRODUCTION

This is an unlawful entry/search and excessive force case involving police officers from the Portland Police Bureau ("PPB"). Plaintiffs have brought claims under 42 U.S.C. § 1983 for unlawful entry and search against the City of Portland and state common law claims for (1) trespass - unlawful entry; (2) battery – excessive force; (3) false arrest; and (4) false imprisonment arising from a warrantless entry and search by PPB officers of plaintiffs Thomas Glenn's and Patsy McKinney's home in NE Portland. (Third Amend. Compl.; Mayor Aff. ¶ 2; Ex. 1). On August 12, 2008, at approximately 9:00 a.m., PPB officers entered plaintiffs' home without a search warrant and without plaintiffs' consent to allegedly perform a search under the PPB's "emergency entries" policy and ORS 133.033, Oregon's Community Caretaking statute. Their justification was based solely on a virtually anonymous 911 call from a passerby on the street who reporting that noises were coming from the residence.

Eight police officers from the PPB responded and gained access to plaintiffs' residence through coercion by threatening to break down the front door. Once inside and having searched the first floor and finding nobody injured or in need of emergency assistance, PPB officers set about searching the second floor. Plaintiff Thomas Glenn verbally protested the continued search of his home. In response, PPB officers used excessive force to subdue and arrest Mr. Glenn and severely dislocated his right foot in the process. Mr. Glenn's girlfriend, plaintiff Patsy McKinney, was also physically subdued by a PPB officer and injured for protesting the officers' unlawful search and use of force on Mr. Glenn. The PPB officers searched the second floor of plaintiffs' home and found nobody in need of need of medical aid, help or community caretaking emergency assistance. PPB officers arrested Mr. Glenn and transported him to the NE Precinct in his underwear, bathrobe and slippers. (Def's Answer to Third Amend. Compl., p. 4, ¶ 8;

Mayor Aff. ¶ 3; Ex. 2).

The responding PPB officers cited and charged Mr. Glenn with interfering with a peace officer – ORS 162.247 and obstructing governmental administration – ORS 162.235 because he did not willingly open the front door and consent to the warrantless entry and search of his house by Portland Police Bureau officers, including the second floor.  (Def's Answer to Third Amend. Compl., p. 4, ¶ 9).  Mr. Glen pled "Not Guilty" and went to trial on November 17, 2008.  *Id.*  Mr. Glenn was acquitted of all charges in *State of Oregon v. Thomas A. Glenn,* Multnomah County Circuit Court, Case No. 0808-50599.  (*Id.*; Mayor Aff. ¶ 4; Ex. 3).  The court ruled that the officers' entry and search of Mr. Glenn's home was warrantless, was without Mr. Glenn's consent and was unconstitutional.  (Mayor Aff. ¶ 5; Ex. 4).

Plaintiffs provided official tort claims notice to the City of Portland less than 180 days after the subject incident.  (Def's Answer to Third Amend. Compl. p. 5, ¶ 10).

///

///

///

///

///

///

///

///

///

///

///

## STATEMENT OF FACTS

Plaintiffs Thomas Glenn and Patsy McKinney are residents of a residential house located at 4704 NE 6th Ave., Portland, Oregon. (Def's Answer to Third Amend. Compl., p. 2, ¶ 4). On August 12, 2008, at or around 9:01 a.m., the Bureau of Emergency Communication in Portland received a 911 call from a female caller who identified herself only as "Raya." (*Id.*, p. 2, ¶ 5). The caller reported she was walking past the address of 4704 NE 6th Ave., Portland, Oregon and heard: "slamming and a female screaming." *Id.* The 911 operator did not request any additional information from the caller about what she heard or observed, the caller's last name, her address or any other information except for a cellular phone number. (*Id.*; Matthews Dep., p. 13, ll. 17-19, 22, 25; Jackson Dep., p. 10, ll. 14, 19-20). Portland Police were then called by dispatch to respond to the location. (*Id.*; Matthews Dep., p. 13, ll. 6-8; Jackson Dep., pp. 9-10, ll. 25-3). At no point did the responding police officers speak to the anonymous caller known only as "Raya" or obtain additional information before responding to the address. (Matthews Dep., p. 14, l. 11; Jackson Dep., p. 11, ll. 18-19, 22, 25, p. 12, l. 3).

Portland Police Bureau officers Douglas Matthews and Freddie Jackson were the first officers to respond to plaintiffs' residence. (Matthews Dep., p. 15, ll. 16-17, 19; Jackson Dep., p. 12, ll. 16-22). Neither officer Matthews nor officer Jackson were familiar with the residence or had prior experience with it. (Matthews Dep., pp. 15-16, ll. 22, 24-2; Jackson Dep., p. 13, ll. 9-10, 13). Neither officer knew who lived in the residence. (Matthews Dep., p. 16, l. 4; Jackson Dep., p. 13, l. 15). Officers Matthews and Jackson ascended a series of stairs from the sidewalk up onto a porch. (Matthews Dep., p. 16, ll. 10-16). As they approached the front door, neither office could see anybody on the premises. (Matthews Dep., pp. 16-17, ll. 23-2, 5; Jackson Dep. p. 14, l. 11). Nor could the officers see anybody located within the residence. (Matthews Dep.,

pp. 17-18, ll. 9-10, 13-2, 20-21; Jackson Dep., p. 14, l. 24). Officer Matthews could not hear any sounds coming from inside the house. (Matthews Dep., pp. 18-19, ll. 9-10, 20-21, 24-12). Officer Jackson thought he heard a television playing inside the house, but nothing else. (Jackson Dep. p. 14, ll. 3-5). Neither officer heard screaming, slamming or sounds of a struggle coming from within the house. (Matthews Dep. p. 18, ll. 9-24, p. 19, ll. 8-12; Jackson Dep. pp. 15-16, ll. 18-23, 24-8). Nor did the officers talk with any of the neighbors prior to approaching the residence. (Matthews Dep., p. 19, l. 16; Jackson Dep., p. 16, l. 11). At this point, there were no indicia of an emergency observed by either Officer Matthews or Officer Jackson. (Matthews Dep., p. 21, l. 19; Jackson Dep., p. 15, ll. 11, 14). Around this time Officer Steve Staul arrived and went around to the back of the house. (Staul Dep., p. 17, ll. 7-13).

Officer Jackson knocked on the front door, but did not get a response. (Matthews Dep., pp. 21-22, ll. 22-24, 4-5). Officer Jackson continued to knock for approximately four or five minutes before plaintiff Thomas Glenn, the homeowner and resident, came to the door and spoke to the officers through a window. (Matthews Dep., p. 22, ll. 11-12, 16-17; Jackson Dep. pp. 13-14, ll. 19-20, 25-1). Mr. Glenn's face did not appear injured. (Matthews Dep. p. 23, ll. 9-18). Officer Matthews told Mr. Glenn they received a 911 call and he demanded entry so they could search Mr. Glenn's house. (Matthews Dep., pp. 22-23, ll. 22-2, p. 26, l. 3; Jackson Dep. p. 22, ll. 3-4, 8-9). The officers did not have a search warrant. (Def's Answer to Third Amend. Compl., p. 3, ¶ 6; Matthews Dep., p. 27, l. 22; Jackson Dep., p. 23, l. 10). Mr. Glenn did not consent to the entry. (Def's Answer to Third Amend. Compl., p. 3, ¶ 6; Mayor Aff. ¶ 6; Ex. 5, RFA Res., p. 2, No. 3; Matthews Dep. p. 25, ll. 21-22). Officer Matthews attempted to open the front door, but it was locked. (Matthews Dep., pp. 40-41, ll. 22-9).

Officer Matthews talked with Mr. Glenn for five to six minutes and continued to demand

entry into the house. (Matthews Dep., p. 26, l. 3,  p. 35, ll. 12-13).  Mr. Glenn told the officers

he and his girlfriend, Patsy McKinney, had been sleeping and nobody was injured or needed

assistance. (Matthews Dep., p. 36, ll. 4-15).  Officer Matthews threatened Mr. Glenn that they

would "force the door open" if Mr. Glenn did not let them in to search his house.  (Matthews

Dep. p. 25, ll. 16-17, 24-25; Montgomery Dep., pp. 25-26, ll. 22-13).  Had the door been

unlocked, Officer Matthews would have entered the premises.  (Matthews Dep., p. 41, ll. 12-16).

This interaction between Mr. Glenn and officers Matthews and Jackson went on for ten to fifteen

minutes. (Jackson Dep., p. 27, ll. 12-13).  Throughout this period of time, Officer Jackson had

his duty weapon (a Glock .9 millimeter handgun) drawn and pointed toward the ground.

(Jackson Dep. pp. 28-29, ll. 19-6).

Officer Matthews then called his supervisor, Sergeant Scott Montgomery, who responded

to the porch shortly thereafter and observed Mr. Glenn's face in the window.  (Matthews Dep., p.

37, ll. 4-12; Montgomery Dep., pp. 15-16, ll. 22-16).  Mr. Glenn continued to refuse consent to a

warrantless entry and search of his home, but told the officers nobody inside the house was hurt.

(Montgomery Dep., p. 21, l. 16, p. 23, l. 19).  Officer Matthews threatened to force the door open

again. (Montgomery Dep., pp. 25-26, ll. 22-13).  Within a few minutes, Mr. Glenn's girlfriend,

plaintiff Patsy McKinney, who also lived in the home, came to the window next to the front

door. (Matthews Dep., p. 38, ll. 6-19; Montgomery Dep., p. 35, ll. 8-14).  In response to

questions, Ms. McKinney told the officers she was fine and had been sleeping.  (Matthews Dep.,

p. 39, ll. 4-5, 23, p. 40, l. 6; Montgomery Dep., p. 37, ll. 2-14).  The officers continued to

demand entry into the home and Officer Matthews threatened Ms. McKinney that he would

break down the door if it was not opened.  (Matthews Dep., p. 40, ll. 12-13; Montgomery Dep.,

pp. 37-38, ll. 24-2).  Refusing entry was not an option available to plaintiffs.  (Matthews Dep., p.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL        5
SUMMARY JUDGMENT

39, ll. 13-19; Montgomery Dep., p. 36, ll. 4-21; VanBlokland Dep., p. 36, ll. 6-15).  Under the threat of force, Ms. McKinney opened the front door.  (McKinney Dep., p. 24, ll. 5-18, pp. 22-23, ll. 22-25, 1-24; Matthews Dep., p. 42, ll. 21-25; Jackson Tr., pp. 15-16, ll. 11-25, 1-12).

Officers Matthews, Jackson, Sgt. Montgomery and other officers, who had responded, then entered plaintiffs' home without plaintiffs' consent and searched the first floor.  (Ex. 5, RFA Res., p. 2, No. 4; Matthews Dep., p. 44, ll. 10-25; Jackson Dep., pp. 36-38, ll. 25-3; Montgomery Dep., p. 40, ll. 12-16).  Once inside, the officers encountered both plaintiffs and their friend, Bernard Williams, who was sitting on the living room couch.  (Matthews Dep., pp. 46-47, ll. 19-25, 1-25; Jackson Dep., pp. 38-39, ll. 16-6; Montgomery Dep. p. 45, ll. 7-25).  Neither Mr. Glenn, Ms. McKinney nor Mr. Williams were injured or in need of assistance.  (Matthews Dep., pp. 48-49, ll. 3-25, 1-12; Jackson Dep., p. 39, ll. 10-25, p. 41, ll. 21-25; Montgomery Dep. p. 46, ll. 14-19, p. 47, l. 16; Staul Dep., pp. 32-33, ll. 16-13).  None of the occupants possessed weapons.  (Matthews Dep., p. 49, ll. 15-16; Jackson Dep., pp. 41-42, ll. 25-6; Montgomery Dep. p. 47, ll. 18-25).  After searching the first floor, the officers found no injured persons, indications that a true emergency existed or evidence of a crime.  (Def's Answer to Third Amend. Compl., p. 3, ¶ 6).

After completing their search of the first floor, Officer Matthews declared he was going to search the second floor.  (Def's Answer to Third Amend. Compl., p. 3, ¶ 7; Matthews Dep., p. 52, ll. 9-13; Montgomery Dep., p. 51, ll. 18-22).  There were no sounds coming from the second floor.  (Matthews Dep., p. 56, ll. 9-18, p. 57, ll. 19-22; Jackson Dep., p. 44, ll. 18-22; Montgomery Dep., pp. 52-53, ll. 22-2).  None of the officers called out or yelled to see if anyone was on the second floor.  (Matthews Dep., p. 56, l. 21; Jackson Dep., pp. 44-45, ll. 23-4; Montgomery Dep., p. 53, ll. 5-6).  Most of the officer failed to ask the occupants if anyone was

on the second floor even though plaintiffs said nobody was upstairs. (Matthews Dep., p. 55, ll. 3-8; Jackson Dep., p. 44, ll. 12-15; Montgomery Dep., p. 52, ll. 9-10). At this point in the warrantless entry of plaintiffs' home, none of the officers learned any new facts that indicated somebody was on the second floor of plaintiffs' home. (Matthews Dep., p. 62, ll. 16-20; Jackson Dep., p. 45, ll. 9-14; Montgomery Dep., p. 55, ll. 23-25; Staul Dep., p. 35, ll. 16-20, p. 36, l. 7).

Mr. Glenn, who was standing on a landing of the stairway to the second floor, did not consent to the officers searching the second floor of his house. (Def's Answer to Third Amend. Compl. p. 3, ¶ 7; Ex. 5, RFA Res., p. 2, No. 5; Matthews Dep., p, 53, ll. 13-19, p. 54, ll. 16-25; Jackson Dep., pp. 43-44, ll. 10-25, 1-9; Montgomery Dep., p. 49, ll. 12-13, p. 52, ll. 3-6; Staul Dep., p. 27, ll. 16-21, p. 36, l. 24). Officer Matthews immediately grabbed Mr. Glenn with both hands, pulled him off the landing and took him down onto the ground floor below, thereby causing a right mid-foot dislocation and fracture in the process. (Third Amend. Compl., pp. 4, 5-6, ¶¶ 7, 14). At no point did Officer Matthews ask Mr. Glenn to step aside or step down off the landing prior to using physical force. (Matthews Dep., pp. 66-67, ll. 24-1, p. 68, ll. 24-25, p. 74, ll. 12-22). At no point had Mr. Glenn touched or posed a threat to Officer Matthews. (Matthews Dep., p. 69, ll. 17-18; Montgomery Dep., p. 56, ll. 7-17). Ms. McKinney verbally protested Officer Matthews' use of force on Mr. Glenn. In response, Officer VanBlokland entered the home, pulled Ms. McKinney out the front door, slammed her against the wall and handcuffed her, causing injuries to her finger, chest wall and back. (Third Amend. Compl.). The officers then entered and searched the second floor. (Matthews Dep., p. 86, l. 6; Jackson Dep., p. 53, ll. 10-15). There were no people on the second floor. (Matthews Dep., p. 86, l. 8; Jackson Dep., p. 53, ll. 16-22). The officers then arrested Mr. Glenn and took him to the NE Precinct in his underwear, bathrobe and house slippers. (Def's Answer to Third Amend. Compl., p. 4, ¶ 8).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[S]ummary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed. R. Civ. P. 56(d)(2). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

## LEGAL ARGUMENT

Plaintiffs Thomas Glenn and Patsy McKinney move for partial summary judgment with respect to liability on all claims alleged against defendant City of Portland, which stem from the unlawful entry and search of plaintiffs' residence on August 12, 2008 by numerous Portland Police Bureau officers. To recover on their federal claims under 42 U.S.C. § 1983 for unlawful entry and search against the City of Portland, plaintiffs must show: (1) that the conduct complained of was committed by a person or entity acting under the color of state law; and (2) that the conduct deprived the plaintiffs of a federal constitutional right. *Wood v. Ostrander,* 879 F.2d 583, 587 (9th Cir. 1990). Defendant has admitted that its police officers were acting under the color of law during the subject incident. (Def's Answer to Third Amend. Compl., p. 2, ¶ 3). Thus, the remaining issue for the court to decide is whether the officers' conduct violated plaintiffs' constitutional right to be free from unlawful entries and searches of their home under both the United States Constitution and the Oregon Constitution, which each provide as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> No law shall violate the right of the people to be secure in their persons, houses, papers, and effects , against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Or. Const. art. I, § 9.

Both the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Oregon Constitution require the police to obtain a warrant before conducting searches unless a recognized exception to the warrant requirement applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Stevens,* 311 Or. 119, 126, 806 P.2d 92 (1991). Further, the defendant bears the "heavy burden" of proving that an exception to the warrant requirement existed. *Welsh v. Wisconsin,* 466 U.S. 740, 749-750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Stevens,* 311 Or. at 126. In the instant case, it is undisputed that the PPB officers did not have a warrant to enter or search plaintiffs' home on the morning of August 12, 2008. (Def's Answer to Third Amend. Compl., p. 3, ¶ 6; Matthews Dep., p. 27, l. 22; Jackson Dep., p. 23, l. 10). Thus, to be considered a lawful entry into plaintiffs' home, the PPB officers must have either obtained plaintiffs' consent or have entered under a constitutional exception to the warrant requirement. Defendant did not do either.

## I.    PPB Officers did not have Plaintiffs' Consent to Enter and Search Plaintiffs' Home.

Plaintiffs have alleged that the PPB officers entry and search of their residence, including the second floor, was done without their consent. (Third Amend. Compl. ¶¶ 6-7, 31, 34, 39, 45, 62, 65, 70 and 76). Plaintiffs move for partial summary judgment with respect to this allegation

because there are no genuine issues of material fact and plaintiffs are entitled to judgment as a matter of law. Under federal law, "to establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given." *United States v. Chan-Jimenez,* 125 F.3d 1324, 1327 (9th Cir. 1997). "'The existence of consent to search is not lightly to be inferred,' and the government 'always bears the burden of proof to establish the existence of effective consent.'" *United States v. Shaibu,* 920 F.2d 1423, 1426 (9th Cir. 1990) (citation omitted) (quoting *United States v. Patacchia,* 602 F.2d 218, 219 (9th Cir. 1979), and *United States v. Impink,* 728 F.2d 1228, 1232 (9th Cir. 1984)). The government's "burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina,* 391 U.S. 543, 548-49, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Whether consent was voluntarily given is to be determined by analysis of the "totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Further, "[consent must] not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* at 228.

   In the instant case, plaintiffs did not consent to the entry and search of their residence. Nor did plaintiffs consent to the search of the second floor of the house. Defendant has admitted that Mr. Glenn did not give consent to the PPB officers to enter his residence. (Def's Answer to Third Amend. Compl., p. 3, ¶ 6; Ex. 5, RFA Res., p. 2, Nos. 3-4; Matthews Dep. p. 25, ll. 21-22, p. 44, ll. 10-25; Jackson Dep., pp. 36-38, ll. 25-3; Montgomery Dep., p. 21, l. 16, p. 23, l. 19, p. 40, ll. 12-16). Defendant also admitted that Mr. Glenn did not consent to a search of the second floor of his house. (Def's Answer to Third Amend. Compl. p. 3, ¶ 7; Ex. 5, RFA Res., p. 2, No. 5; Matthews Dep., p, 53, ll. 13-19, p. 54, ll. 16-25; Jackson Dep., pp. 43-44, ll. 10-25, 1-9; Montgomery Dep., p. 49, ll. 12-13, p. 52, ll. 3-6; Staul Dep., p. 27, ll. 16-21, p. 36, l. 24).

Further, Officer Matthews, the first officer who entered plaintiffs' residence, testified that Ms. McKinney did not consent to the search of the residence and told him "you can't come in." (Matthews Dep., pp. 44-45, ll. 20-6). Defendants admit that neither plaintiff invited the officers into the residence. (Matthews Dep., p. 44, l. 14; Jackson Dep., pp. 36-37, ll. 25-8; Montgomery Dep., p. 40, ll. 12-13).

Notwithstanding plaintiffs' verbal refusals to give consent, the PPB officers were able to gain entry into plaintiffs' residence with coercion after Patsy McKinney unlocked and opened the front door. However, the mere act of opening a front door does not equal voluntary consent as a matter of law. *See State v. Martin,* 222 Or. App. 138, 146, 193 P.3d 993 (2008), *rev. den.,* 345 Or. 690 (2009) (holding that the act of opening a door in response to a police officer knocking does not equal consent to entry); *United States v. Shaibu, supra,* 920 F.3d at 1427 ("We do not expect others to walk in to our homes, even if the door is open, without first requesting permission to enter."). More importantly, Ms. McKinney only unlocked and opened the front door in response to direct and implied threats from the PPB officers. Accordingly, she could not give voluntary consent to enter and search as a matter of law.

As previously stated, consent cannot be freely and voluntarily given if it is "coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth v. Bustamonte,* 412 U.S. at 228. In this case, the PPB officers made direct and implied threats to plaintiffs to gain access to the residence. Officer Matthews directly threatened both plaintiffs that he would break down the front door if they did not open it for him. (Matthews Dep. p. 25, ll. 16-17, 24-25, p. 40, ll. 12-13, p. 42, ll. 21-25; Montgomery Dep., pp. 25-26, ll. 22-13, pp. 37-38, ll. 24-2; Jackson Tr., pp. 15-16, ll. 11-25, 1-12; McKinney Dep., p. 24, ll. 5-18, pp. 22-23, ll. 22-25, 1-24). It was only in response to the threats of force by the officers that Ms. McKinney opened the front door.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

11

(McKinney Dep., p. 24, ll. 5-18, pp. 22-23, ll. 22-25, 1-24; Matthews Dep., p. 42, ll. 21-25;

Jackson Tr., pp. 15-16, ll. 11-25, 1-12).

Further, while Officer Matthews was threatening force to gain entry to plaintiffs' home,

Officer Jackson had his Glock .9 millimeter handgun drawn and pointed toward the ground,

which created an implied threat.  (Jackson Dep. pp. 28-29, ll. 19-6).  An occupant cannot give

voluntary consent to enter and search when an officer has his weapon drawn. *See United States*

*v. Chan-Jimenez,* 125 F.3d 1324, 1326-28 (9th Cir. 1997) (the officer's hand on his gun, on a

deserted stretch of highway, with no advice of the right to refuse consent, rendered the purported

consent involuntary).  Moreover, in the PPB officers' minds, refusing entry was not an option

available to plaintiffs anyway.  (Matthews Dep., p. 39, ll. 13-19; Montgomery Dep., p. 36, ll. 4-

21; VanBlokland Dep., p. 36, ll. 6-15).  Consent is involuntary if officers implied that the

homeowner did not have a choice. *See United States v. Winsor,* 846 F.2d 1569, 1573, n. 3 (9th

Cir. 1988) (holding that "compliance with a police command is not consent."); *United States v.*

*Bautista,* 362 F.3d 584, 591-92 (9th Cir. 2004) (holding that no consent was given when

occupant opened door in response to police officer's demand); *United States v. Connor,* 127 F.3d

663, 666 (8th Cir. 1997) ("[A]n unconstitutional search occurs when officers gain visual or

physical access to a motel room after an occupant opens the door not voluntarily, but in response

to a demand under color of authority.").

Finally, assuming for the sake of argument that Patsy McKinney's act of opening the

front door could be construed as voluntary consent (which it cannot), the officers did not have

plaintiff Thomas Glenn's consent.  When two individuals with equal authority in the home are

both present and disagree on consent, officers may not enter. *Georgia v. Randolph,* 547 U.S.

103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006); *see also United States v. Murphy,* 516 F.3d

1117 (9th Cir. 2008) (occupant of a storage unit's refusal to consent trumped a co-tenant's consent, even if the co-tenant paid the rent). Here, the single act of unlocking and opening the front door by Ms. McKinney cannot be construed as voluntary consent when defendant has admitted that co-resident and homeowner, Thomas Glenn, did not consent to the officers entry and search of his residence. (Def's Answer to Third Amend. Compl., p. 2, ¶ 4, p. 3, ¶ 6; Ex. 5, RFA Res., p. 2, No. 3).

For these reasons, there is no genuine issue of material fact regarding plaintiffs' allegations that PPB officers entered and searched their residence, including the second floor, without plaintiffs' consent and therefore, the court should grant Plaintiffs' Motion for Partial Summary Judgment on this issue.

## II.    PPB Officers' Warrantless Entry and Search of Plaintiffs' Home was Unconstitutional as a Matter of Law.

Plaintiffs have each brought claims against the City of Portland under 42 U.S.C. § 1983 for making an unconstitutional entry and search of plaintiffs' home, including the second floor, under the PPB's policy relating to emergency entries and the community caretaking statute. (Third Amend. Compl. ¶¶ 36-47, 67-78). Plaintiffs have alleged that the policy is unconstitutional on its face and that the application of the City's policy by PPB officers in this case was unconstitutional. (*Id.* at ¶¶ 38, 44, 69, 75). Plaintiffs move for partial summary judgment with respect to liability on both allegations against the City of Portland based on its emergency entries policy. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality may be held liable under § 1983 when the deprivation of the plaintiff's federally protected right is attributable to enforcement of a municipal policy or practice).

///

## A. Warrantless Entries and the Emergency Aid Exception.

To be lawful under the Fourth Amendment, a police officer may <u>only</u> enter a home under the following circumstances:  (1) with a valid search warrant; (2) after gaining voluntary consent from the occupants; or (3) if there are exigent circumstances, or an emergency.  *Steagald v. United States,* 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (emphasis added).  As previously stated, the PPB officers did not have a search warrant to enter and search plaintiffs' residence, (Def's Answer to Third Amend. Compl., p. 3, ¶ 6), and the officers did not have plaintiffs' consent to enter and search.  *See* (Section I, *supra*).  Thus, to be constitutional, the PPB officers' entry and search of plaintiffs' residence, including the second floor, must have been pursuant to a valid exception to the warrant requirement.

"The Fourth Amendment prohibits police officers from making a warrantless entry into a person's home, unless the officers have probable cause *and* are presented with exigent circumstances."  *LaLonde v. County of Riverside,* 204 F.3d 947, 954 (9th Cir. 2000) (emphasis in original) (citing *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).  "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."  *Id.* (internal quotation marks omitted) (quoting *Payton,* 445 U.S. at 586).  There are two general exceptions to the warrant requirement for home searches; exigency and emergency.  Under the exigency doctrine, a warrantless search of a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist.  *United States v. Lai,* 994 F.2d 1434, 1441 (9th Cir. 1991) (abrogated on other grounds).  Here, however, defendant is not claiming its police officers relied on exigent circumstances.  (Def's Answer to Third Amend. Compl. ¶¶ 6-8, 31, 34, 39, 45, 62, 65, 70, 76, 91).

The final exception to the warrant requirement is the "emergency exception" a/k/a the "emergency aid exception." A lawful search under the emergency aid exception to the warrant requirement requires the following: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life; (2) the search must not be primarily motivated by intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *United States v. Cervantes,* 219 F.3d 882, 888-889 (9th Cir. 2000). It is the emergency aid exception to the warrant requirement that defendant has invoked to justify the PPB officers entry and search of plaintiffs' residence pursuant to its policy relating to emergency entries and the community caretaking statute. (Def's Answer to Third Amend. Compl. ¶¶ 6-8, 31, 34, 39, 45, 62, 65, 70, 76, 91). For the following reasons, defendant's conduct pursuant to the policy failed to meet the emergency aid exception to the warrant requirement and was unconstitutional as a matter of law.

## B. The PPB's Emergency Entries Policy is Facially Unconstitutional.

As previously stated, plaintiffs' have alleged the PPB's emergency entries policy is unconstitutional on its face because it permitted and encouraged its police officers to enter private homes under circumstances that do not fall within the exigency or emergency exceptions to the Fourth Amendment's prohibition of warrantless entries into homes. (Third Amend. Compl. ¶¶ 37-38, 43-44, 68-69, 74-75). Further, it was this policy, which caused plaintiffs' injuries after the officers entered and searched plaintiffs' residence. *Id.* It is undisputed that the officers in this case all relied on the PPB's emergency entries policy as justification for making the warrantless entry and search of plaintiffs' residence. (Matthews Dep., p. 93, ll. 11-15; Jackson Dep., p. 57, ll. 15-21; Montgomery Dep., pp. 74-75, ll. 22-1; Staul Dep., pp. 42-43, ll.

25-4; Passadore Dep., p. 54, ll. 8-16; VanBlokland Dep., pp. 59-60, ll. 25-15). The PPB's "Emergency Entries" policy states in relevant part:

> **Emergency Entries (631.60)**
> a. Under ORS 133.033, any sworn member may make an emergency entry of any premises, without the consent of the person in possession or entitled to possession thereof, if they have reasonable basis for believing the entry into the premises is required to:
>   1. Prevent serious harm to any person or property.
>   2. Render aid to injured or ill persons.
>   3. Locate missing persons.
>   4. Assist persons who are mentally incompetent/unable to care for themselves, are unaccompanied by a competent party, and may be in a situation where their welfare is at risk.

(Mayor Aff. ¶ 7; Ex. 6).

The PPB's emergency entries policies implements and relies on ORS 133.033, which is Oregon's community caretaking statute. The community caretaking statute, ORS 133.033, provides in relevant part:

> (1) Except as otherwise expressly prohibited by law, any peace officers of this state, as defined in ORS 133.005, is authorized to perform community caretaking functions.
>
> (2) As used in this section, "community caretaking functions" means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. "Community caretaking functions" includes, but is not limited to:
>
>   (a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:
>   (A) Prevent serious harm to any person or property;
>   (B) Render aid to injured or ill persons; or
>   (C) Locate missing persons.

The PPB's emergency entries policies essentially incorporates or adopts the community caretaking statute's stated reasons for allowing warrantless entries and searches of private homes. The emergency entries policy also adds a fourth basis for entry – to provide assistance to mentally incompetent persons or persons who are unable to care for themselves. (Ex. 6). As

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
16

written, the emergency entries policy is not constitutional on its face.  The PPB emergency

entries policy is facially unconstitutional in that it does not limit warrantless entries pursuant to

the requirements of the emergency aid doctrine and because it lowers the threshold of when an

entry is permitted and authorized by PPB officers.  For instance, provision (a)(4) of the

**Emergency Entries (631.60)** policy provides:

> a.  Under ORS 133.033, any sworn member may make an
>     emergency entry of any premises, without the consent of
>     the person in possession or entitled to possession thereof, if
>     they have reasonable basis for believing the entry into the
>     premises is required to:
>
>                         ****
>
> 4.  Assist persons who are mentally incompetent/unable to
>     care for themselves, are unaccompanied by a competent
>     party, and may be in a situation where their welfare is at
>     risk.

(Ex. 6).

Provision (a)(4) of the emergency entries policy permits warrantless entries, without

consent, if the officer believes the entry is required to assist persons "**who are mentally**

**incompetent** [or] **who are unable to care for themselves**, are unaccompanied by a competent

person, and **may be in a situation where their welfare is at risk**." *Id.* (emphasis added).  On its

face, subsection (a)(4) of the emergency entries policies permits warrantless entries into private

homes under circumstances outside of the scope of either the exigency or emergency aid

exceptions to the Fourth Amendment prohibition against warrantless entries.  The policy permits

officers to effect warrantless entries on the basis of speculation, whereas the exceptions to the

Fourth Amendment prohibition permit such entries only under circumstances giving rise to the

affirmative, reasonable belief that significant harm would occur if the officer did not enter the

premises.  Further, the policy as written permits officers to make warrantless entries based on

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL                    17
SUMMARY JUDGMENT

mental incompetence or inability to care for oneself (two unconstitutional reasons) without also requiring an immediate need for their assistance for the protection of life (a constitutional necessity). The policy, as written, lowers the bar (unconstitutionally) for what is required of PPB officers for <u>all</u> warrantless entries made pursuant to the emergency entries policy.

Subsection (a)(3) of the emergency entries policy is also facially unconstitutional because location of missing persons is not a constitutional exception for the warrant requirement under the emergency aid doctrine. *See United States v. Cervantes, supra,* 219 F.3d at 888-889 (9th Cir. 2000). Moreover, the PPB's emergency entries policy does not contain the other two constitutional requirements under the emergency aid exception:

- the search must not be primarily motivated by intent to arrest and seize evidence; and

- there must be some reasonable basis, approximately probable cause, to associate the emergency with the area or place to be searched.

*Id.* Also, the emergency entries policy's adoption of the community caretaking statute's stated reasons for allowing warrantless entries and searches is facially flawed because the community caretaking statute is not an exception to the warrant requirement. *See* (Section II(C), *infra*). For these reasons, the PPB's Emergency Entries (631.60) policy is unconstitutional on its face.

Further, it was this facially unconstitutional policy that caused plaintiffs' injuries. (Third Amend. Compl. ¶¶ 37, 43, 68, 74). By admitting that their entry and search of plaintiffs' home, including the second floor, was pursuant to the PPB's emergency entries policy, the officers and the City of Portland have essentially conceded that the policy played a causal role in the deprivation of plaintiffs' constitutional rights. For these reasons, plaintiffs are entitled to partial summary judgment on their claims under 42 U.S.C. § 1983 for unconstitutional entry and search pursuant to defendant's facially unconstitutional emergency entries policy.

///

### C. The PPB's Emergency Entries Policy as Applied in this Case was Unconstitutional.

In addition to being facially unconstitutional, the application of the PPB's emergency entries policy by defendant through its police officers in this case was unconstitutional.  As a threshold, the application of the PPB's emergency entries policy and Oregon's community caretaking statute must still meet constitutional standards.  The fact of the community caretaking statute's existence, does not, alone, provide legal authority to all warrantless entries.  *State v. Christenson,* 181 Or. App. 345, 45 P.3d 511, 514 (2002).[1]  In *Christenson,* the Court of Appeals determined that the officers' reliance upon the community caretaking statute was unreasonable in light of the facts, and that the entry and search still had to comply with constitutional standards, which it did not.  *Id.* at 514-515.  In other words, community caretaking is not an exception to the warrant requirement.  *Id.* at 514; *State v. Martin, supra,* 222 Or. App. at 146.

Oregon state courts have frequently emphasized that a warrantless entry must conform to the constitution's requirements even where the entry is arguably pursuant to the community caretaking statute.  *See, e.g., State v. Christenson,* 181 Or. App. at 350-351 (warrantless entry not justified by community caretaking statute based on the existence of open door, failure to respond to officers and large, vicious dogs having exited the home); *State v. Martin,* 222 Or. App. at 147-150  (warrantless entry by Portland Police Bureau officers not justified by the community caretaking statute when suspect to a hit and run accident flung open the front door while naked, then ran into a back bedroom, leaving the door open, but not inviting officers in or giving her consent to enter); *State v. Salisbury,* 223 Or. App. 516, 524-525, 196 P.3d 1017 (2008) (warrantless entry not justified by community caretaking statute when officers knew defendant

---

[1] ORS 133.033 is a state statute, and plaintiffs were unable to locate any federal court cases interpreting its application.  However, there are numerous Oregon appellate cases interpreting the applicability of the statute and of the emergency aid doctrine, which are helpful and are discussed herein.

had been speeding, had entered apartment without stopping to talk with officer, a female voice screaming from inside the home after defendant's entry, profanity, yelling and screaming by male and female voices, and no one answered the door for 15-20 minutes despite police officers' repeated knocking); *State v. Pierce,* 226 Or. App. 336, 342, 203 P.3d 343 (2009) (warrantless entry not justified under community caretaking statute by disorderly conduct noise disturbance, and where no immediate need for assistance for the protection of life was evidenced).

By contrast to PPB's emergency entries policy and the community caretaking statute, the emergency aid doctrine is an exception to the warrant requirement. *State v. Bridewell,* 306 Or. 231, 236, 759 P.2d 1054 (1988). The emergency aid doctrine differs from the community caretaking function in that it requires a "true emergency." *Christenson, supra,* 181 Or. App. at 352. In *State v. Follett,* the court stated that the emergency aid doctrine applies when the following four criteria are met:

(1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

(2) The emergency must be a true emergency – the officer's good faith belief alone is insufficient.

(3) The search must not be primarily motivated by an intent to arrest or to seize evidence.

(4) The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency.

115 Or. App. 672, 680, 840 P.2d 1298 (1992).

### 1. The Initial Entry and Search of the Main Floor was Unconstitutional.

In the instant case, defendant's police officers did not have reasonable grounds to believe there was a "true emergency" and an immediate need for their assistance for the "protection of life." A true emergency exists only if:

There are reliable, objective indicia of a potential victim of a dangerous circumstances or a potential perpetrator of a dangerous act. Suspicious circumstances or 'gut instinct' are insufficient. The existence of an identifiable victim or perpetrator is significant because whether an emergency exists depends on whether immediate action is required ('something that will alleviate the emergency'), which, in turn, depends on the relationship between the gravity of the harm to be prevented and the probability that the harm will occur if action is not taken."

*State v. Fredricks,* 238 Or. App. 349, 358, 243 P.3d 97 (2010) (quoting *State v. Burdick,* 209 Or. App. 575, 581, 149 P.3d 190 (2006)). Based on the following, there were no reliable, objective indicia of a "true emergency" to justify the warrantless entry and search made by the PPB officers under the emergency entries policy.

The only piece of information the PPB officers knew was that a female named "Raya" had called 911 and reported that she heard "slamming and a female screaming" as she walked past plaintiffs' residence. (Def's Answer to Third Amend. Compl., p. 2, ¶ 5). None of the responding police officers ever spoke to "Raya" or obtained additional information from her. (Matthews Dep., p. 14, l. 11; Jackson Dep., p. 11, ll. 18-19, 22, 25, p. 12, l. 3). None of the responding police officers had prior experience with plaintiffs' residence or knew who lived there. (Matthews Dep., pp. 15-16, ll. 22, 24-4; Jackson Dep., p. 13, ll. 9-10, 13, 15). The responding officers could not see anyone on the premises or anybody located within the residence. (Matthews Dep., pp. 16-17, ll. 23-2, 5, pp. 17-18, ll. 9-10, 13-2, 20-21; Jackson Dep., p. 14, ll. 11, 24). Other than the possible sound of a television playing inside, the house was silent. There was no screaming, slamming or sounds of a struggle coming from within the house. (Matthews Dep., p. 18, ll. 9-24, p. 19, ll. 1-12; Jackson Dep. p. 14, l. 3, pp. 15-16, ll. 18-23, 24-8). None of the officers spoke with any neighbors prior to approaching the residence. (Matthews Dep., p. 19, l. 16; Jackson Dep., p. 16, l. 11). Upon their arrival at just after 9:00 a.m. that morning, there were no indicia of an emergency observed by the responding police officers.

(Matthews Dep., p. 21, l. 19; Jackson Dep., p. 15, ll. 11, 14).

     The officers initially knocked on the front door for approximately four or five minutes before Thomas Glenn came to the door and spoke to the officers through a window. (Matthews Dep., p. 22, ll. 11-12, 16-17; Jackson Dep. pp. 13-14, ll. 19-20, 25-1). Mr. Glenn's face did not appear injured to the officers. (Matthews Dep. p. 23, ll. 9-18). Mr. Glenn told the officers he and his girlfriend, Patsy McKinney, had been sleeping and nobody was injured or needed assistance. (Matthews Dep., p. 36, ll. 4-15). Mr. Glenn and officers Matthews and Jackson spoke to each other through the window for ten to fifteen minutes. (Jackson Dep., p. 27, ll. 12-13). Sergeant Montgomery arrived and Mr. Glenn told him that nobody inside the house was hurt. (Montgomery Dep., p. 21, l. 16, p. 23, l. 19). Then Patsy McKinney came to the window next to the front door, (Matthews Dep., p. 38, ll. 6-19; Montgomery Dep., p. 35, ll. 8-14), and told the officers she was fine and had been sleeping. (Matthews Dep., p. 39, ll. 4-5, 23, p. 40, l. 6; Montgomery Dep., p. 37, ll. 2-14). Ms. McKinney's face did not appear injured. (Matthews Dep., p. 39, ll. 7-10; Montgomery Dep., p. 36, l. 25). The officers did not ask Ms. McKinney if she had been assaulted or threatened in any manner. (Matthews Dep., p. 40, l. 9; Jackson Dep., p. 31, l. 25, pp. 33-34, ll. 22-1; Montgomery Dep., p. 37, ll. 17-18).

     Only after the threat of force, did Ms. McKinney open the front door. (McKinney Dep., p. 24, ll. 5-18, pp. 22-23, ll. 22-25, 1-24; Matthews Dep., p. 42, ll. 21-25; Jackson Tr., pp. 15-16, ll. 11-25, 1-12). Upon opening the front door, the officers saw Ms. McKinney's whole body and she did not appear injured. (Matthews Dep., pp. 43-44, ll. 17-8; Jackson Dep., p. 35, ll. 9-23; Montgomery Dep., pp. 39-40, ll. 24-7). Prior to entering plaintiffs' home the officers had not identified a particular person who they thought may have been a victim of violence and they did not have any evidence of a missing person. (Matthews Dep., pp. 50-51, ll. 25-8; Jackson Dep., p.

42, l. 20; Montgomery Dep., p. 48, ll. 19-22). Prior to entering plaintiffs' home, the officers did not have any evidence that a crime had been committed in the house. (Matthews Dep., p. 91, l. 8; Montgomery Dep., pp. 71-72, ll. 20-3).

After gaining access and searching the main floor, the officers found that none of the occupants were injured or in need of assistance. (Matthews Dep., pp. 48-49, ll. 3-25, 1-12; Jackson Dep., p. 39, ll. 10-25, p. 41, ll. 21-25; Montgomery Dep., p. 46, ll. 14-19, p. 47, l. 16; Staul Dep., pp. 32-33, ll. 16-13). Further, none of the occupants possessed weapons. (Matthews Dep., p. 49, ll. 15-16; Jackson Dep., pp. 41-42, ll. 25-6; Montgomery Dep. p. 47, ll. 18-25). After searching the first floor, the officers found no injured persons, indications that a true emergency existed or evidence of a crime. (Def's Answer to Third Amend. Compl., p. 3, ¶ 6).

Based on the foregoing, there were no facts to indicate to the officers there was a "true emergency" and an immediate need for their assistance for the "protection of life" to justify a warrantless entry under the PPB's emergency entries policy. All the officers had was a "hunch" based on a virtually anonymous 911 call devoid of any details and Mr. Glenn's refusal to allow the officers to enter and search when they did not have a warrant and were threatening to break down his door. The officers did not have a potential victim, could see no injuries, were told no one was injured, saw no evidence of violence or a crime and confirmed that everyone inside was fine and not in need of assistance. Not only is the PPB's emergency entries policy (which incorporates the community caretaking statute) facially unconstitutional, it was unconstitutionally applied by the officers when they entered plaintiffs' residence and searched the main floor.

### 2.   The Entry and Search of the Second Floor was Unconstitutional.

Plaintiffs also move for partial summary judgment with respect to liability on count II of

their claims under 42 U.S.C. § 1983 for unconstitutional entry and search of the second floor of their residence. Based on their initial entry and search of the main floor and encounters with all of the occupants, there were absolutely no reliable, objective indicia of a "true emergency" to justify the warrantless entry and search of the second floor made by the PPB officers under the emergency entries policy.

Prior to searching the second floor of plaintiffs' residence, there were no sounds of any kind coming from the second floor, (Matthews Dep., p. 56, ll. 9-18, p. 57, ll. 19-22; Jackson Dep., p. 44, ll. 18-22; Montgomery Dep., pp. 52-53, ll. 22-2), and none of the officers called out or yelled to see if anyone was on the second floor. (Matthews Dep., p. 56, l. 21; Jackson Dep., pp. 44-45, ll. 23-4; Montgomery Dep., p. 53, ll. 5-6). Most of the officer failed to ask the occupants if anyone was on the second floor even though plaintiffs said nobody was upstairs. (Matthews Dep., p. 55, ll. 3-8; Jackson Dep., p. 44, ll. 12-15; Montgomery Dep., p. 52, ll. 9-10). At this point in the encounter, none of the officers learned any new facts that indicated somebody was on the second floor of plaintiffs' home. (Matthews Dep., p. 62, ll. 16-20; Jackson Dep., p. 45, ll. 9-14; Montgomery Dep., p. 55, ll. 23-25; Staul Dep., p. 35, ll. 16-20, p. 36, l. 7).

Plaintiffs did not consent to the officers searching the second floor of their house. (Def's Answer to Third Amend. Compl. p. 3, ¶ 7; Ex. 5, RFA Res., p. 2, No. 5; Matthews Dep., p. 53, ll. 13-19, p. 54, ll. 16-25; Jackson Dep., pp. 43-44, ll. 10-25, 1-9; Montgomery Dep., p. 49, ll. 12-13, p. 52, ll. 3-6; Staul Dep., p. 27, ll. 16-21, p. 36, l. 24). Nonetheless, the officers entered and searched the second floor anyway, (Matthews Dep., p. 86, l. 6; Jackson Dep., p. 53, ll. 10-15), and found nobody on the second floor. (Matthews Dep., p. 86, l. 8; Jackson Dep., p. 53, ll. 16-22). Once inside, there was more information known to the officers about the house and its occupants than when they were outside on the front porch. Even with the additional information,

nothing indicated to the officers there was a "true emergency" and an immediate need for their assistance for the "protection of life" to justify a warrantless entry and search of the second floor under the PPB's emergency entries policy.

Whatever hunch or suspicion the officers had about a possible emergency prior to arrival at plaintiffs' residence, those suspicions had dissipated once the officers entered the house, determined the occupants were safe, and did not observe or hear anything outside or inside the premises that indicated someone needed their assistance for the "protection of life." Courts have invalidated warrantless searches made under similar facts. *See State v. Davis,* 295 Or. 227, 239-240, 666 P.2d 802 (1983) (after victim walked out of motel room, officers could no longer base subsequent entry on concern for victim's safety); *State v. Torres,* 198 Or. App. 218, 223-228, 108 P.3d 69 (2005) (after police had conducted sweep of home and alleviated concerns underlying entry, any emergency had dissipated, and police were not justified in entering garage); *State v. Bridewell, supra,* 306 Or. at 236 (delay between report of missing person and search undercut claim of emergency).

For these reasons, the PPB's emergency entries policy was also unconstitutionally applied by the officers when they entered and searched the second floor of plaintiffs' residence.

### 3. Both Searches were made Pursuant to the PPB's Emergency Entries Policy.

As previously stated, plaintiffs have alleged the PPB's emergency entries policy caused the officers to enter and search plaintiffs' residence, including the second floor, and it was the application of this policy that violated plaintiffs' constitutional rights. (Third Amend. Compl. ¶¶ 37-38, 43-44, 68-69, 74-75). It is undisputed that the officers all relied on the PPB's emergency entries policy as justification for making the warrantless entry and search of plaintiffs' residence. (Matthews Dep., p. 93, ll. 11-15; Jackson Dep., p. 57, ll. 15-21; Montgomery Dep., pp. 74-75, ll.

22-1; Staul Dep., pp. 42-43, ll. 25-4; Passadore Dep., p. 54, ll. 8-16; VanBlokland Dep., pp. 59-60, ll. 25-15).  Moreover, the officers actually believed that the PPB's emergency entries (631.60) policy created an exception to the warrant requirement, (Matthews Dep., p. 34, l. 23; Jackson Dep., p. 26, l. 11; Montgomery Dep., p. 31, l. 6; VanBlokland Dep., pp. 28-29, ll. 24-7; Staul Dep., p. 30, l. 15), which it does not. *See State v. Martin, supra,* 222 Or. App. at 146 (community caretaking statute does not establish an exception to the warrant requirement). Accordingly, there is no genuine issue of material fact that the officers entered and searched plaintiffs' home, including the second floor, pursuant to the PPB's policy related to emergency entries, which incorporated the community caretaking statute.

### 4. Subsequent Reviews Found the Officers' Search of Plaintiffs' Residence Unconstitutional.

Even subsequent judicial review and independent police review found that the officers' warrantless search and entry of plaintiffs' residence under the PPB's emergency entries policy and community caretaking statute was unconstitutional.  Even though the officers tried to cloak their unconstitutional search of plaintiffs' home by arresting and charging Mr. Glenn, he was acquitted of all charges in *State v. Glenn,* Multnomah County Circuit Court, Case No. 0808-50599. (Mayor Aff. ¶ 4; Ex. 3).  The court ruled that the officers' entry and search of Mr. Glenn's home was unconstitutional. (Mayor Aff. ¶ 5; Ex. 4).  In evaluating the constitutionality of defendant's entry and search of plaintiffs' residence, plaintiffs respectfully request this court to take judicial notice of the state court's determination that the officers' entry and search was unconstitutional. *Id.*  "A judicially noticed fact must be one not subject to reasonable dispute in that it is…capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b).  "A court shall take judicial notice if requested by a party and supplied with the necessary information." *Id.* at (d).  This court may take judicial

notice of the relevant state court documents and outcomes because they are relevant to issues in this case. *Smith v. Duncan,* 297 F.3d 809, 815 (9th Cir. 2002); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

In addition to the above mentioned judicial review, the City of Portland's Independent Police Review Division ("IPR") investigated the warrantless entry and search made by the PPB officers in this case. (Sandrock Dep., p. 17, ll. 23-25). Upon review of the investigation, Peter Sandrock, the Assistant Director of IPR, opined that the officers made an illegal entry of plaintiffs' residence when he said the following:

> Q. Would you read your handwriting under the heading "Expected Findings" out loud, please.
>
> A. Quote, "It was probably an illegal entry, but the officers acted in accordance with training. PPB needs to address the scope of community caretaking."
>
> Q. Was that your opinion on March 21, 2009?
>
> A. Yes.

(Sandrock Dep., p. 7, ll. 14-20, pp. 8-9, ll. 22-6, pp. 22-23, ll. 18-15; Mayor Aff. ¶ 8; Ex. 7).

Further, IPR had been concerned prior to the subject incident that PPB officers had developed a custom or practice of using the emergency entries policy and community caretaking statute to gain access to private homes in an unconstitutional manner. IPR Assistant Director Peter Sandrock wrote a cover memorandum to the IPR staff on March 24, 2009 with a copy of the trial court's opinion on Mr. Glenn's criminal case. In the cover memorandum, Mr. Sandrock told the IPR staff the following:

> "We've been concerned for some time now that [PPB] officers have stretched the
> Community Caretaking Statute too far. Here's a relatively recent opinion letter
> from the Multnomah County Circuit judge that relates to one of our cases."

(Sandrock Dep., pp. 27-28, ll. 15-4; Mayor Aff. ¶ 9; Ex. 8). Mr. Sandrock's concern stemmed

from a pattern of citizen complaints about PPB officers using the community caretaking statute

to gain access to private homes without a search warrant as well as the evolution of the law

regarding warrantless entries. (Sandrock Dep., pp. 28-29, ll. 9-25, 1-13); *see also* (Section

II(C)(5), *infra*).

Accordingly, the foregoing judicial review and admission by the City of Portland are

further evidence that the PPB officers violated plaintiffs' constitutional rights when they entered

and searched plaintiffs' premises pursuant to the PPB emergency entries policy.

### 5.   Defendant Acted with Deliberate Indifference to a Known Risk that the Emergency Entries Policy was Unconstitutional.

Defendant City of Portland acted with deliberate indifference to a known risk that the

PPB's emergency entries policy was unconstitutional. As previously stated in Section II(C)(4),

*supra,* IPR had been concerned prior to the subject incident that PPB officers had developed a

custom or practice of using the emergency entries policy and community caretaking statute to

gain access to private homes in an unconstitutional manner. (Sandrock Dep., pp. 27-28, ll. 15-4;

pp. 28-29, ll. 9-25, 1-13; Mayor Aff. ¶ 9 Ex. 8). In fact, during the years 2004 through 2008, IPR

had received voluminous complaints about PPB officers conducting illegal warrantless entries

and searches, including searches purportedly made under the PPB emergency entries policy.

(Mayor Aff. ¶ 10; Ex. 9). During those years, IPR received 72 allegations that PPB officers

made unlawful entries and 57 allegations that PPB officers made warrantless search and/or

seizures of a dwelling. *Id.* Correspondence between IPR Assistant Director Peter Sandrock and

PPB personnel prior to the subject incident proves the PPB's knowledge of the pattern of

complaints about unconstitutional entries and searches being made pursuant to the emergency

entries policy.  (Mayor Aff. ¶ 11; Ex. 10).

For all of these reasons, Plaintiffs' Motion for Partial Summary Judgment with respect to

liability on their claims under 42 U.S.C. § 1983 should be granted.

**III.    As a Matter of Law, the PPB Officers Trespassed on Plaintiffs' Property
Because their Entry and Search of Plaintiffs' Home was Unconstitutional.**

Plaintiffs have each brought state common law claims for trespass (unlawful entry)

against defendant City of Portland arising from the PPB officers illegal and nonconsensual

entries and searches of plaintiffs' home on the morning in question, including trespass onto the

second floor of their home.  (Third Amend. Compl. ¶¶ 30-35, 61-66).  Plaintiffs move for partial

summary judgment with respect to liability on both counts of their claims for common law

trespass.  In Oregon, a trespass arises when an entry on the land of another disturbs the

possessor's interest in the right to exclusive possession of the land.  Trespass involves an

interference with the right of possession, not of ownership.  The plaintiff need not be the owner

of the land trespassed on, but the plaintiff must be in lawful possession of it.  *See Boyer v.

Anduiza,* 90 Or. 163, 165-166, 175 P. 853 (1918) (defendant's sheep damaged grass and forage

on lessor's leasehold).  Liability for an intentional trespass does not depend on whether the act

resulting in the trespass was reasonable.  *Gymnastics USA v. McDougal,* 92 Or. App. 453, 457 n.

4, 758 P.2d 881 (1988).  Further, damages from a trespass are presumed without the necessity of

proof.  *Rhodes v. Harwood,* 273 Or. 903, 926, 544 P.2d 147 (1975).

In addition to the common law right to the exclusive possession of their property,

plaintiffs have a constitutional right to be free from unlawful entries and searches of their home

under both the United States Constitution and the Oregon Constitution, Article I, Section 9.

Article I, Section 9 of the Oregon Constitution requires the police to obtain a warrant before

conducting searches unless a recognized exception to the warrant requirement applies. *See, e.g., State v. Stevens,* 311 Or. 119, 126, 806 P.2d 92 (1991). Further, the state bears the burden of proving that an exception to the warrant requirement existed. *Id.*

In the instant case, it is undisputed that the PPB officers did not have a warrant to enter or search plaintiffs' home on the morning of August 12, 2008. (Def's Answer to Third Amend. Compl., p. 3, ¶ 6; Matthews Dep., p. 27, l. 22; Jackson Dep., p. 23, l. 10). It is also undisputed that the officers did not have plaintiffs' consent to enter and search their residence, including the second floor. *See* (Section I, *supra*). Finally, the officers' warrantless entry and search of both floors of plaintiffs' residence under the PPB's emergency entries policy and the community caretaking statute was not constitutional because there were no facts to suggest there was a "true emergency" as required under the emergency aid exception to the warrant requirement of Article I, Section 9 of the Oregon Constitution. *State v. Follett,* 115 Or. App. at 680. *See* (Section II, *supra*).

For these reasons, there are no genuine issues of material fact for trial and Plaintiffs' Motion for Partial Summary Judgment with respect to liability on both counts of their common law trespass claims should be granted.

## IV.   As a Matter of Law, Plaintiffs are Entitled to Summary Judgment on their Claims for False Arrest and False Imprisonment.

Plaintiffs each bring state common law claims for false arrest and plaintiff Glenn also brings a state common law claim for false imprisonment. (Third Amend. Compl. ¶¶ 19-29, 55-60). To prevail on their claims for false arrest: (1) the defendant must confine the plaintiff; (2) the defendant must intend the act that causes the confinement; (3) the plaintiff must be aware of the confinement; and (4) the confinement must be unlawful. *Ross v. City of Eugene,* 151 Or.

App. 656, 663, 950 P.2d 372 (1997); *Hiber v. Creditors Collection Service,* 154 Or. App. 408, 413, 961 P.2d 898 (1998).  The first three elements of the claim are undisputed for each plaintiff. The PPB officers intended to confine and did confine each plaintiffs by arresting them and placing them in handcuffs.  (Def's Answer to Third Amend. Compl., pp. 3-4, ¶¶ 7-8). Each plaintiff was aware that they were in handcuffs and had been arrested.  The officers took Mr. Glenn away from his home to the NE Precinct in his underwear, bathrobe and house slippers.  (*Id.* at p. 4, ¶ 8).

Under the final element, the detention or restrain must be unlawful and against plaintiffs' will.  If detention or confinement is against the plaintiffs' will, to avoid liability the defendant must show justification for the imprisonment.  *Kraft v. Montgomery Ward & Co.,* 220 Or. 230, 244, 348 P.2d 239 (1959).

## A.  The Arrest and Detention of Plaintiff Thomas Glenn was Unlawful.

Mr. Glenn was arrested for interfering with a peace officer (ORS 162.247) and obstructing governmental administration (ORS 162.235) because he did not consent to the warrantless entry and search of his house by Portland Police Bureau officers.  (Def's Answer to Third Amend. Compl., p. 4, ¶ 9).  The statutory crime of Interfering with a peace officer states in relevant part:

> (1) A person commits the crime of interfering with a peace officers or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181.610:
>
> (a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the **lawful duties** of the officer with regards to another person; or
>
> (b) Refuses to obey a **lawful order** by the peace officer or parole and probation officer.

ORS 162.247 (emphasis added).

Obstructing governmental or judicial administration, on the other hand, states in relevant part:

> (1) A person commits the crime of obstructing governmental or judicial administration if the person intentionally obstructs, impairs or hinders the administration of law or other governmental or judicial function by means of intimidation, force, physical or economic interference or obstacle.

> (2) This section **shall** **not** **apply** to the obstruction of **unlawful** **governmental** or judicial **action** or interference with the making of an arrest.

ORS 162.235 (emphasis added).

To be a lawful arrest pursuant to the aforementioned crimes, the PPB officers must have given Mr. Glenn a "lawful order" and must have been engaged in lawful "governmental action or administration." However, as previously stated, the PPB officers were not lawfully present in Mr. Glenn's home when they arrested him because they entered and searched his house in violation of his constitutional rights under the Fourth Amendment to the United States Constitution and under Article I, Section 9 of the Oregon Constitution. *See* (Sections II & III, *supra*). Because they did not have a legal basis to enter and search Mr. Glenn's home, any order given or attempt made to do so was unlawful.

Moreover, Mr. Glenn was acquitted of both charges in *State v. Glenn,* Multnomah County Circuit Court, Case No. 0808-50599, which had been reduced from misdemeanors to violations. (Mayor Aff. ¶¶ 4-5; Exs. 3-4). As such, the State's burden of proof in Mr. Glenn's criminal trial was the lower by a preponderance of the evidence standard. ORS 153.076. Thus, the burden of proof was the same "more likely than not" standard needed for probable cause to arrest. *See* ORS 131.005(11) ("'Probable' cause means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."). Even with the much easier burden of proof for the State, Mr. Glenn was

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

acquitted and the court ruled that the PPB officers' entry and search of Mr. Glenn's home was illegal. (Mayor Aff. ¶¶ 4-5; Exs. 3-4). For these reasons, the PPB officers did not have justification to arrest and imprison Thomas Glenn thereby making his arrest and detention unlawful.

### B. The Arrest and Detention of Plaintiff Patsy McKinney was Unlawful.

Similarly, the PPB officers arrested and handcuffed Ms. McKinney while they searched the second floor of plaintiffs' home. While they did not take Ms. McKinney to the precinct or charge her with a crime, this arrest and detention was unlawful for the same reasons that Mr. Glenn's arrest and detention was unlawful. As with Mr. Glenn, the PPB officers were not lawfully present in Ms. McKinney's home when they handcuffed and arrested her because they entered and searched the house in violation of her constitutional rights under the Fourth Amendment to the United States Constitution and under Article I, Section 9 of the Oregon Constitution. *See* (Sections II & III, *supra*). Because they did not have a legal basis to enter and search Ms. McKinney's home, any order given or attempt made to do so was unlawful. For these reasons, there are no genuine issues of material fact and plaintiffs are entitled to partial summary judgment with respect to liability on their claims for false arrest and false imprisonment.

### V. As a Matter of Law, Plaintiffs are Entitled to Summary Judgment on their Claims for Battery.

Plaintiffs each bring state common law claims for battery against defendant for the PPB officers' use of force against them. (Third Amend. Compl. ¶¶ 11-18, 48-54). A battery is a voluntary act that causes intentionally harmful or offensive contact with another. *Cook v. Kinzua Pine Mills, Co.,* 207 Or. 34, 48-49, 293 P.2d 717 (1956). It is not necessary that the offensive, unpermitted touching cause actual physical harm; "it is sufficient if the contact is offensive or

insulting." *Bakker v. Baza'r, Inc.,* 275 Or. 245, 249, 551 P.2d 1269 (1976).  Even when a person has the right to use force to accomplish a legitimate purpose, the person may be liable for battery when the force used is excessive under the circumstances.  *Rich v. Cooper,* 234 Or. 300, 208, 380 P.2d 613 (1963) (officer making arrest).

It is undisputed that the PPB officers intentionally used force against each plaintiff in a harmful and offensive manner.  (Third Amend. Compl. ¶¶ 11-18, 48-54; Def's Answer to Third Amend. Compl., pp. 3-4, ¶¶ 7-8; Matthews Dep., pp. 79-83; VanBlokland Dep., p. 54, ll. 9-21).

Here, the PPB officers were not justified in using any force against plaintiffs to effectuate an arrest or otherwise, because they had entered plaintiffs' property in violation of plaintiffs' constitutional rights.  *See* (Sections I-IV, *supra*).  For these reasons, Plaintiffs' Motion for Partial Summary Judgment with respect to liability on plaintiffs' battery claims should be granted.

## CONCLUSION

For the aforementioned reasons, plaintiffs request the court enter an order granting Plaintiffs' Motion for Partial Summary Judgment on the "no consent" allegation and with respect to liability on all claims alleged against defendant City of Portland.

Respectfully submitted this 21st day of December, 2011.

LAW OFFICES OF MICHAEL L. ROSENBAUM

By:    */s/ Travis J. Mayor*_____
        Michael L. Rosenbaum, OSB No. 760267
        Travis J. Mayor, OSB No. 053210
        Ph: (503) 288-8000
        Fx: (503) 288-8046
        Of Attorneys for plaintiffs Thomas Glenn
        and Patsy McKinney

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT                                    34

## CERTIFICATE OF SERVICE

I hereby certify that I served, on the date set forth below, the foregoing

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL

SUMMARY JUDGMENT via the following method on:

William Manlove III
City Attorney's Office
1221 SW 4th Ave., Suite 430
Portland, OR 97204
William.Manlove@portlandoregon.gov


By electronic service via CM/ECF.


DATED this 21st day of December, 2011.




_/s/ Travis J. Mayor_
Travis J. Mayor