Michael L. Rosenbaum, OSB No. 760267
E-mail: mikelaw100@yahoo.com
Travis J. Mayor, OSB No. 053210
E-mail: tjm@rosenbaumlitigation.com
Law Offices of Michael L. Rosenbaum
1826 NE Broadway
Portland, OR 97232
Telephone No.: (503) 288-8000
Fax No.: (503) 288-8046

Of Attorneys for Plaintiffs Thomas Glenn and Patsy McKinney

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THOMAS GLENN; and PATSY McKINNEY,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF PORTLAND, a Public body,<br><br>　　　　　　　　Defendant. | Case No.: 11-CV-00402-KI<br><br>PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Pursuant to Fed. R. Civ. P. 56 and L.R 56-1, plaintiffs Thomas Glenn and Patsy McKinney submit the following Memorandum of Law in Response to Defendant City of Portland's Motion for Partial Summary Judgment. Plaintiffs hereby incorporate as if fully set forth herein, the Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment filed on December 21, 2011 (Document Number 31 and Attachments 1-22) in response to defendant's motion as plaintiffs also moved for partial summary judgment with respect to liability on their claim under 42 U.S.C. § 1983 alleging defendant's emergency entries policy is facially unconstitutional. Also in support of their response, plaintiffs rely on the Affidavit of Travis J. Mayor with attached plaintiffs' exhibits 1-9.

## STATEMENT OF FACTS

On August 12, 2008, the Portland Police Bureau was a law enforcement agency operated by defendant City of Portland, (Def's Answer to Third Amend. Compl., p. 2, ¶ 3), and Douglas Matthews, Freddie Jackson, Scott Montgomery, Kelly VanBlokland, Anthony Passadore, Steve Staul, James Habkirk and Joseph Hardy were police officers acting within the course and scope of their employment for the Portland Police Bureau and the City of Portland. (*Id.*). Plaintiffs Thomas Glenn and Patsy McKinney were (and continue to be) residents of a residential house located at 4704 NE 6th Ave., Portland, Oregon. (*Id.,* p. 2, ¶ 4). On August 12, 2008, the aforementioned police officers entered and searched plaintiffs' home, including the second floor, without a search warrant and without plaintiffs' consent. (Def. City of Portland's Memo. of Law, p. 2). *See also* (Def's Answer to Third Amend. Compl., p. 3, ¶¶ 6-7).

As justification for making the warrantless and non-consensual entry and search of plaintiffs' home, the officers relied on the PPB's emergency entries policy. (Matthews Dep., p. 93, ll. 11-15; Jackson Dep., p. 57, ll. 15-21; Montgomery Dep., pp. 74-75, ll. 22-1; Staul Dep., pp. 42-43, ll. 25-4; Passadore Dep., p. 54, ll. 8-16; VanBlokland Dep., pp. 59-60, ll. 25-15). The officers believed that the PPB's emergency entries (631.60) policy created an exception to the Fourth Amendment's warrant requirement. (Matthews Dep., p. 34, l. 23; Jackson Dep., p. 26, l. 11; Montgomery Dep., p. 31, l. 6; VanBlokland Dep., pp. 28-29, ll. 24-7; Staul Dep., p. 30, l. 15). The PPB's "Emergency Entries" policy states in relevant part:

///

///

///

///

**Emergency Entries (631.60)**
    a. Under ORS 133.033, any sworn member may make an emergency entry of any premises, without the consent of the person in possession or entitled to possession thereof, if they have reasonable basis for believing the entry into the premises is required to:
        1. Prevent serious harm to any person or property.
        2. Render aid to injured or ill persons.
        3. Locate missing persons.
        4. Assist persons who are mentally incompetent/unable to care for themselves, are unaccompanied by a competent party, and may be in a situation where their welfare is at risk.

(Mayor Aff. ¶ 3; Ex. 2, p. 1 of 2).

Plaintiffs' have alleged the PPB's emergency entries policy is unconstitutional on its face because it permitted and encouraged its police officers to enter private homes under circumstances that do not fall within the exigency or emergency exceptions to the Fourth Amendment's prohibition of warrantless entries into homes. (Third Amend. Compl. ¶¶ 37-38, 43-44, 68-69, 74-75). Plaintiffs have also alleged that it was this policy, which caused plaintiffs' injuries after the officers entered and searched plaintiffs' residence. *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. The court must draw all reasonable inferences in favor of plaintiffs, the nonmoving party. *Noyes v. Kelly Services,* 488 F.3d 1163, 1167 (9th Cir. 2007).

## LEGAL ARGUMENT

I. **Plaintiffs Object to Exhibit 1 Attached to the Affidavit of Charles A. Fender and all References Made to Exhibit 1 by Defendant Because it is Not Admissible.**

Pursuant to Fed. R. Civ. P. 56(2), "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See also* L.R. 56-1(b) ("[A] party may assert evidentiary objections in its response…"). Defendant City of Portland, in support of its motion for partial summary judgment, has attached as Exhibit 1 to the Affidavit of Charles A. Fender, what it purports to be "Directive 631.60 related to Premises Entry contained in the Bureau's Manual of Policy and Procedures dated January 2007", which was supposedly effective on August 12, 2008. (Affidavit of Charles A. Fender, Exhibit 1, pp. 1-3; Document 34, and 34-1). However, the purported policy directive is an invoice from Bridge City Legal to the City of Portland for what appears to be a document scanning job in another case, *Alexander v. Portland,* 2008-0407-01. Defendant's Exhibit 1, pp. 1-3, attached to the Affidavit of Charles A. Fender is unrelated to this case, is irrelevant, and thus is inadmissible. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible").

II. **Defendant City of Portland's Motion for Partial Summary Judgment Should be Denied Because the Emergency Entries Policy is Facially Unconstitutional.**

A. **Warrantless Entries and the Emergency Aid Exception.**

To be lawful under the Fourth Amendment, a police officer may <u>only</u> enter a home under the following circumstances: (1) with a valid search warrant; (2) after gaining voluntary consent from the occupants; or (3) if there are exigent circumstances, or an emergency. *Steagald v. United States,* 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (emphasis added). As previously stated, the PPB officers did not have a search warrant to enter and search plaintiffs' residence and the officers did not have plaintiffs' consent to enter and search. (Def. City of

Portland's Memo. of Law, p. 2; Def's Answer to Third Amend. Compl., p. 3, ¶¶ 6-7). Thus, to be constitutional, the PPB officers' entry and search of plaintiffs' residence, including the second floor, must have been pursuant to a valid exception to the warrant requirement.

"The Fourth Amendment prohibits police officers from making a warrantless entry into a person's home, unless the officers have probable cause *and* are presented with exigent circumstances." *LaLonde v. County of Riverside,* 204 F.3d 947, 954 (9th Cir. 2000) (emphasis in original) (citing *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* (internal quotation marks omitted) (quoting *Payton,* 445 U.S. at 586). There are two general exceptions to the warrant requirement for home searches; exigency and emergency. Under the exigency doctrine, a warrantless search of a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist. *United States v. Lai,* 994 F.2d 1434, 1441 (9th Cir. 1991) (abrogated on other grounds). Here, however, defendant is not claiming its police officers relied on exigent circumstances. (Def's Answer to Third Amend. Compl. ¶¶ 6-8, 31, 34, 39, 45, 62, 65, 70, 76, 91).

The final exception to the warrant requirement is the "emergency exception" a/k/a the "emergency aid exception." A lawful search under the emergency aid exception to the warrant requirement requires the following: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life; (2) the search must not be primarily motivated by intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency

with the area or place to be searched. *United States v. Cervantes,* 219 F.3d 882, 888-889 (9th Cir. 2000).

### B. The PPB's Emergency Entries Policy is Facially Unconstitutional.

As previously stated, plaintiffs' have alleged the PPB's emergency entries policy is unconstitutional on its face because it permitted and encouraged its police officers to enter private homes under circumstances that do not fall within the exigency or emergency exceptions to the Fourth Amendment's prohibition of warrantless entries into homes. (Third Amend. Compl. ¶¶ 37-38, 43-44, 68-69, 74-75). Further, it was this policy, which caused plaintiffs' injuries after the officers entered and searched plaintiffs' residence. *Id.* It is undisputed that the officers in this case all relied on the PPB's emergency entries policy as justification for making the warrantless entry and search of plaintiffs' residence. (Matthews Dep., p. 93, ll. 11-15; Jackson Dep., p. 57, ll. 15-21; Montgomery Dep., pp. 74-75, ll. 22-1; Staul Dep., pp. 42-43, ll. 25-4; Passadore Dep., p. 54, ll. 8-16; VanBlokland Dep., pp. 59-60, ll. 25-15). The PPB's "Emergency Entries" policy states in relevant part:

> **Emergency Entries (631.60)**
> b. Under ORS 133.033, any sworn member may make an emergency entry of any premises, without the consent of the person in possession or entitled to possession thereof, if they have reasonable basis for believing the entry into the premises is required to:
> 5. Prevent serious harm to any person or property.
> 6. Render aid to injured or ill persons.
> 7. Locate missing persons.
> 8. Assist persons who are mentally incompetent/unable to care for themselves, are unaccompanied by a competent party, and may be in a situation where their welfare is at risk.

(Mayor Aff. ¶ 3; Ex. 2, p. 1 of 2).

The PPB's emergency entries policies implements and relies on ORS 133.033, which is Oregon's community caretaking statute. The community caretaking statute, ORS 133.033,

provides in relevant part:

> (1) Except as otherwise expressly prohibited by law, any peace officer of this state, as defined in ORS 133.005, is authorized to perform community caretaking functions.
>
> (2) As used in this section, "community caretaking functions" means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. "Community caretaking functions" includes, but is not limited to:
>
>> (a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:
>> (A) Prevent serious harm to any person or property;
>> (B) Render aid to injured or ill persons; or
>> (C) Locate missing persons.

The PPB's emergency entries policy essentially incorporates or adopts the community caretaking statute's stated reasons for allowing warrantless entries and searches of private homes. The emergency entries policy also adds a fourth basis for entry – to provide assistance to mentally incompetent persons or persons who are unable to care for themselves. (Ex. 2, p. 1. of 2). As written, the emergency entries policy is not constitutional on its face. The PPB emergency entries policy is facially unconstitutional in that it does not limit warrantless entries pursuant to the requirements of the emergency aid doctrine and because it lowers the threshold of when an entry is permitted and authorized by PPB officers. For instance, provision (a)(4) of the **Emergency Entries (631.60)** policy provides:

> a. Under ORS 133.033, any sworn member may make an emergency entry of any premises, without the consent of the person in possession or entitled to possession thereof, if they have reasonable basis for believing the entry into the premises is required to:
>
> \*\*\*\*
>
> 4. Assist persons who are mentally incompetent/unable to care for themselves, are unaccompanied by a competent party, and may be in a situation where their welfare is at risk.

(Mayor Aff. ¶ 3; Ex. 2, p. 1 of 2).

Provision (a)(4) of the emergency entries policy permits warrantless entries, without consent, if the officer believes the entry is required to assist persons "**who are mentally incompetent** [or] **who are unable to care for themselves**, are unaccompanied by a competent person, and **may be in a situation where their welfare is at risk**." *Id.* (emphasis added). On its face, subsection (a)(4) of the emergency entries policies permits warrantless entries into private homes under circumstances outside of the scope of either the exigency or emergency aid exceptions to the Fourth Amendment prohibition against warrantless entries. The policy permits officers to effect warrantless entries on the basis of speculation, whereas the exceptions to the Fourth Amendment prohibition permit such entries only under circumstances giving rise to the affirmative, reasonable belief that significant harm would occur if the officer did not enter the premises. Further, the policy as written permits officers to make warrantless entries based on mental incompetence or inability to care for oneself (two unconstitutional reasons) without also requiring an immediate need for their assistance for the protection of life (a constitutional necessity). The policy, as written, lowers the bar (unconstitutionally) for what is required of PPB officers for <u>all</u> warrantless entries made pursuant to the emergency entries policy.

Subsection (a)(3) of the emergency entries policy is also facially unconstitutional because location of missing persons is not a constitutional exception for the warrant requirement under the emergency aid doctrine. *See United States v. Cervantes, supra,* 219 F.3d at 888-889 (9th Cir. 2000). Moreover, the PPB's emergency entries policy does not contain the other two constitutional requirements under the emergency aid exception:

- the search must not be primarily motivated by intent to arrest and seize evidence; and

- there must be some reasonable basis, approximately probable cause, to associate the emergency with the area or place to be searched.

*Id.* Also, the emergency entries policy's adoption of the community caretaking statute's stated reasons for allowing warrantless entries and searches is facially flawed because the community caretaking statute is not an exception to the warrant requirement. *State v. Christenson,* 181 Or. App. 345, 45 P.3d 511, 514 (2002); *State v. Martin,* 222 Or. App. 138, 146, 193 P.3d 993 (2008).[1]

Oregon state courts have frequently emphasized that a warrantless entry must conform to the constitution's requirements even where the entry is arguably pursuant to the community caretaking statute. *See, e.g., State v. Christenson*, 181 Or. App. at 350-351 (warrantless entry not justified by community caretaking statute based on the existence of open door, failure to respond to officers and large, vicious dogs having exited the home); *State v. Martin,* 222 Or. App. at 147-150 (warrantless entry by Portland Police Bureau officers not justified by the community caretaking statute when suspect to a hit and run accident flung open the front door while naked, then ran into a back bedroom, leaving the door open, but not inviting officers in or giving her consent to enter); *State v. Salisbury,* 223 Or. App. 516, 524-525, 196 P.3d 1017 (2008) (warrantless entry not justified by community caretaking statute when officers knew defendant had been speeding, had entered apartment without stopping to talk with officer, a female voice screaming from inside the home after defendant's entry, profanity, yelling and screaming by male and female voices, and no one answered the door for 15-20 minutes despite police officers' repeated knocking); *State v. Pierce,* 226 Or. App. 336, 342, 203 P.3d 343 (2009) (warrantless entry not justified under community caretaking statute by disorderly conduct noise disturbance,

---

[1] ORS 133.033 is a state statute, and plaintiffs were unable to locate any federal court cases interpreting its application. However, there are numerous Oregon appellate cases interpreting the applicability of the statute and of the emergency aid doctrine, which are helpful and are discussed herein.

and where no immediate need for assistance for the protection of life was evidenced).

By contrast to the PPB's emergency entries policy and the community caretaking statute, the emergency aid doctrine is an exception to the warrant requirement. *State v. Bridewell,* 306 Or. 231, 236, 759 P.2d 1054 (1988). The emergency aid doctrine differs from the community caretaking function in that it requires a "true emergency." *Christenson, supra,* 181 Or. App. at 352. In *State v. Follett,* the court stated that the emergency aid doctrine applies when the following four criteria are met:

> (1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.
>
> (2) The emergency must be a true emergency – the officer's good faith belief alone is insufficient.
>
> (3) The search must not be primarily motivated by an intent to arrest or to seize evidence.
>
> (4) The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency.

115 Or. App. 672, 680, 840 P.2d 1298 (1992).[2]

In the instant case, defendant's emergency entries policy does not require a "<u>true emergency</u>" and an immediate need for their assistance for the "protection of life." A true emergency exists only if:

> There are reliable, objective indicia of a potential victim of a dangerous circumstances or a potential perpetrator of a dangerous act. Suspicious circumstances or 'gut instinct' are insufficient. The existence of an identifiable victim or perpetrator is significant because whether an emergency exists depends on whether immediate action is required ('something that will alleviate the emergency'), which, in turn, depends on the relationship between the gravity of the harm to be prevented and the probability that the harm will occur if action is not taken."

*State v. Fredricks,* 238 Or. App. 349, 358, 243 P.3d 97 (2010) (quoting *State v. Burdick,* 209 Or.

---

[2] Oregon courts have assumed the *Follett* test outlining the conditions for the emergency aid exception satisfies the Fourth Amendment. *State v. Agnes,* 118 Or. App. 675, 678, 848 P.2d 1237 (1993).

App. 575, 581, 149 P.3d 190 (2006)). For these reasons, the PPB's emergency entries policy is facially unconstitutional.

### C. The Emergency Entries Policy Creates an Undue Burden on Plaintiffs' Constitutional Rights and Cannot be Constitutionally Applied.

Defendant City of Portland argues that plaintiffs must show the PPB's emergency entries policy can never be constitutionally applied in order to prove their facial challenge. (Def's Memo. of Law, pp. 5-7). Defendant relies on *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), to argue that a successful facial challenge to a policy "must establish that no set of circumstances exists under which the policy would be valid." (Def's Memo. of Law, pp. 5-6). First, this standard is more flexible than defendant represents, and second, plaintiffs have adequately alleged and can show a facial challenge to the emergency entries police regardless of the standard applied.

For example, in *Planned Parenthood v. Casey,* the Court held that a statute restricting access to abortion could be facially challenged if it presented an "undue burden" upon a constitutional right. 505 U.S. 833, 876-77, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). It is worth noting that after the Court decided *Casey,* Justice Stevens stated that he did "not believe the Court has ever actually applied such a strict standard [as the *Salerno* standard], even in *Salerno* itself." *Washington v. Glucksberg,* 521 U.S. 702, 739-40, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (Steven, J., concurring in judgment). Also, in 1999, in a facial challenge to a gang loitering ordinance, Justices Stevens, Souter and Ginsberg referred to the *Salerno* standard as "dictum" and stated that "[t]o the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of the Court, including *Salerno* itself." *City of Chicago v. Morales,* 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).

The Ninth Circuit, sitting *en banc,* determined the *Casey* standard to be the appropriate standard for a facial challenge to the Washington Natural Death Act. *Compassion in Dying v. State of Washington,* 79 F.3d 790, 798 n. 9 (9th Cir. 1995) ("[S]ince the claimed liberty issues in this case is in many respects similar to the liberty issue involved in *Casey,…* we believe that the *Salerno* test would not in any event be the appropriate one for adjudicating a facial challenge to Washington's prohibition on assisted suicide."), *rev'd on other grounds, Washington v. Glucksberg, supra,* 521 U.S. 702. *See also Planned Parenthood of Southern Arizona v. Lawall,* 180 F.3d 1022 (9th Cir. 1999) (application of *Casey* standard in abortion challenge). Even this court in *Mayfield et al. v. United States,* 540 F.Supp.2d 1023, 1035-0136 (D. Or. 2007), acknowledged that the standard for reviewing a facial challenge to a statute involving the violation of a fundamental civil liberty was in flux and not certain.

Here, because plaintiffs' right to be free from unreasonable searches and seizures under the Fourth Amendment is a constitutional right of the utmost importance (a civil liberty), plaintiffs' facial challenge to the emergency entries policy should be judged by the *Casey* standard as the Supreme Court has done under such circumstances. Under that standard, the emergency entries policy created an "undue burden" on plaintiffs' constitutional rights under the Fourth Amendment. The emergency aid exception to the warrant requirement provides a constitutional exception to the Fourth Amendment's warrant requirement when circumstances are appropriate. However, the PPB's emergency entries policy is a policy that authorizes Portland Police officers to make warrantless entries and searches for unconstitutional reasons and based on unconstitutional criteria. For instance, it authorizes warrantless entries to look for missing persons. It also authorizes warrantless entries pursuant to Oregon's community caretaking statute, ORS 133.033, which does not create an exception to the Fourth Amendment's

warrant requirement. Finally, it allows warrantless entries by officers to "assist persons who are mentally incompetent" or "assist persons who are unable to care for themselves" and are unaccompanied by a competent party and <u>may</u> be in a situation where their welfare is at risk. These criteria for making warrantless entries and searches are not permissible under the emergency aid exception to the warrant requirement. Thus, the policy, as written, created an undue burden on plaintiffs' Fourth Amendment rights.

Further, even under the *Salerno* standard, the PPB's emergency entries policy can never be applied constitutionally for the reasons stated in (Section II(B), *supra*.). As previously stated, the emergency entries policy contains a provision, which allows warrantless entries to assist persons: (1) who are mentally incompetent or unable to care for themselves; (2) are unaccompanied by a competent person; and (3) may be in a situation where their welfare is at risk. (Mayor Aff. ¶ 3; Ex. 2, p. 1 of 2). This provision in the policy lowers the bar (unconstitutionally) for what is required of PPB officers for <u>all</u> warrantless entries made pursuant to the emergency entries policy. Conceivably, every potential emergency could involve a person who is unable to care for himself or herself and whose welfare "may" be at risk. This lower bar would allow defendant and its officers to justify warrantless entries when circumstances do not allow them. Further, even when circumstances would justify a warrantless entry under the emergency aid doctrine, defendant's policy unconstitutionally lowers the minimum threshold thereby making all entries pursuant to the policy unconstitutional.

Defendant City of Portland has previously made this same argument, unsuccessfully, in cases before this court. For instance, in *Sandau v. Wood, Christopher Cass, and City of Portland,* CV07632MO, defendant City of Portland moved for summary judgment against plaintiff's claim that the PPB's emergency entries policy was facially unconstitutional for the

same reasons it argues now. Magistrate Judge Papak denied the City of Portland's motion for summary judgment in that case. *See* (*Sandau v. Wood et al,* CV076322MO, Findings and Recommendations, pp. 30-33 of 36, Document #115; Mayor Aff. ¶ 10; Ex. 9). Shortly thereafter, Judge Mosman adopted Judge Papak's Findings and Recommendations in that case and denied the City of Portland's motion for summary judgment against the plaintiff's *Monell* claim. (*Sandau v. Wood et al,* CV076322MO, Opinion and Order, Document #123; Document #126).

Plaintiffs respectfully request this court to take judicial notice of this court's prior rulings on this identical issue. "A judicially noticed fact must be one not subject to reasonable dispute in that it is…capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." *Id.* at (d). This court may take judicial notice of the motion for summary judgment outcome in *Sandau v. Wood et al.* because it is the identical argument made by the City of Portland in this case, and thus, relevant to issues in this case. *Smith v. Duncan,* 297 F.3d 809, 815 (9th Cir. 2002); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

For the above reasons, defendant's policy created an undue burden on plaintiffs' constitutional rights under the Fourth Amendment. Further, defendant's emergency entries policy cannot be constitutionally applied.

///

///

## CONCLUSION

For the aforementioned reasons, Defendant City of Portland's Motion for Partial Summary Judgment should be denied.

Respectfully submitted this 16th day of January, 2012.

                          LAW OFFICES OF MICHAEL L. ROSENBAUM

                        By:   */s/ Travis J. Mayor*
                               Michael L. Rosenbaum, OSB No. 760267
                               Travis J. Mayor, OSB No. 053210
                               Ph: (503) 288-8000
                               Fx: (503) 288-8046
                                Of Attorneys for plaintiffs Thomas Glenn
                               and Patsy McKinney

## CERTIFICATE OF SERVICE

I hereby certify that I served, on the date set forth below, the foregoing PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF PORTLAND'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT via the following method on:

William Manlove III
City Attorney's Office
1221 SW 4th Ave., Suite 430
Portland, OR 97204
William.Manlove@portlandoregon.gov


By electronic service via CM/ECF.


DATED this 16th day of January, 2012.

*/s/ Travis J. Mayor*
Travis J. Mayor