UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **THOMAS GLENN** and **PATSY McKINNEY**, | Civil Case No. 3:11-CV-00402-KI |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| **CITY OF PORTLAND**, a public body, | |
| Defendant. | |

Michael L. Rosenbaum
Travis J. Mayor
1826 NE Broadway
Portland, Oregon  97232

　　　Attorneys for Plaintiffs

Page 1 - OPINION AND ORDER

William W. Manlove
Senior Deputy City Attorney
Office of City Attorney
1221 SW 4th Avenue, Room 430
Portland, Oregon  97204

       Attorneys for Defendant

KING, Judge:

This action arose when Portland Police officers entered the home of plaintiffs Thomas

Glenn and Patsy McKinney without a warrant.  The officers were responding to a 9-1-1 call from

a passerby who reported hearing slamming sounds and a female screaming.  Plaintiffs allege

claims against the City of Portland ("City") for the common law torts of battery, false arrest, false

imprisonment, and trespass.  Plaintiffs also allege a claim against the City for violation of the

Fourth Amendment's prohibition against unreasonable search and seizure.  Specifically,

plaintiffs allege that the City's policy on emergency entries is unconstitutional on its face and as

applied to plaintiffs.  Before the court are Plaintiffs' Motion for Partial Summary Judgment [31]

and Defendant City of Portland's Motion for Partial Summary Judgment [32].  For the reasons

below, I hold that the Emergency Entries Doctrine is constitutional on its face and grant summary

judgment on that issue in the City's favor.  I deny plaintiffs' motion for summary judgment on

the merits of all the claims, except to hold that plaintiffs did not consent to the officers entering

or searching either floor of plaintiffs' home.

## FACTS

As a threshold matter, plaintiffs object to some of the evidence submitted by the City:  an

expert report by Phillip Zerzan on police practices, the 9-1-1 transcript and recording, and several

excerpts from the officers' depositions which plaintiffs claim reveal the officers' subjective thoughts.  In the analysis below, there is no need for me to rely on the Zerzan report or the 9-1-1 transcript, so the objections against them are moot.  As to the officers' deposition excerpts, I do not rely on most of the portions drawing objections, particularly about the scope of the emergency search and the requirements for emergency entries under the City's policy.  Thus, those objections are moot.  I do rely on some of the statements concerning the extent of Thomas Glenn's anger, however, because those statements are both subjective thoughts and objective indications of Glenn's demeanor that are relevant to the issues raised by the motion.

Plaintiffs Thomas Glenn and Patsy McKinney live in a home located on 4704 NE 6th Avenue in Portland, Oregon.  On August 12, 2008, at approximately 9:01 a.m., the City's Bureau of Emergency Communication received a 9-1-1 call from a female who identified herself as "Raya."  The caller reported that she was walking past 4704 NE 6th Avenue and had reason to believe there was a domestic dispute because she heard slamming and a female screaming. Officers from the Portland Police Bureau ("PPB") were dispatched to the location.  Officers Matthews and Jackson were the first to arrive at the house and were given the information from the 9-1-1 call.

The officers noticed a window on each side of the door but could not see any people inside.  Officer Jackson could hear a television playing inside.  Neither officer heard any other sounds–no slamming or screaming or sounds of a struggle.  Backup officers began to arrive. Officer Jackson knocked on the door at least five times and after four or five minutes, Glenn looked out through the window next to the door.  Officer Matthews explained through the window about the 9-1-1 call and asked to be let in.

Page 3 - OPINION AND ORDER

Officer Matthews describes Glenn's demeanor as angry and states that Glenn was yelling and his eyes were opened really wide. Glenn yelled, "Go away, we don't need you," and refused to open the door. Matthews Dep. at 29. After five or six minutes of discussion, Officer Matthews called for a sergeant to come. Officer Jackson and Sergeant Montgomery rated Glenn's yelling as eight out of ten on a scale with ten being a person screaming at the top of their lungs and one being a conversational tone. Officer Jackson drew his weapon and pointed it at the ground because Glenn was so angry.[1]

Officer Matthews eventually told Glenn that if he did not open the door, the officers would force it open. The two went back and forth. At some point, McKinney came and told Officer Matthews through the window that she was not hurt. Officer Matthews refused to leave unless the officers could check the house for an injured person. After about 15 minutes, McKinney opened the door and the officers walked inside and checked the first floor of the house. They found no one injured.

The officers did not hear any sounds coming from upstairs. Officer Matthews told Glenn that they were going to search the second floor. Officer Matthews asked McKinney to get out of the way, and she refused. Officer VanBlokland (one of the backup officers) escorted McKinney outside by grabbing her wrist and upper tricep area, held her against the wall when she began to struggle, handcuffed her, and searched her for injuries.

Glenn stood on a landing of the stairs. Glenn puffed out his chest, yelled that the officers were not going upstairs, and blocked the stairs with his outstretched arms. Officer Matthews and

---

[1] Plaintiffs object that this is an indication of the officer's subjective state of mind, which is not relevant under <u>Snipe</u>. I understand plaintiffs' point, but the fact is also indicative of the severity of Glenn's anger, an objective fact.

Glenn had a physical altercation on the stairs when the officer took Glenn's arm to escort him

outside.  The officer took Glenn to the ground, handcuffed him, and escorted him outside.  The

officers checked the second floor of the house and found no one.  They did not check the

basement because the stairs appeared to be in such disrepair that they thought it would have been

unsafe to try to use them.

The prior facts are from the officers' perspective.  Glenn admits Officer Matthews'

badgering and persistence made him angry but he states that he did not scream and yell at the

officers before he opened the door.  Glenn also states he did not tell the officers that they were

not going upstairs, and he did not physically prevent them from going upstairs by stretching his

arms across the stairs.

Glenn was charged with Interfering with a Peace Officer, ORS 162.247, and Obstructing

Government Administration, ORS 162.235.  The charges were reduced to violations, and he was

acquitted on both counts.  As part of the criminal case, a Multnomah County judge found that the

entry and search of Glenn's house was not authorized under ORS 133.033 and did not fall within

an exception to the warrant requirement.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact

and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

initial burden is on the moving party to point out the absence of any genuine dispute of material

fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains a fact dispute to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the

court "must view the evidence on summary judgment in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party." Nicholson v.

Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## DISCUSSION

Plaintiffs allege claims against the City for the common law torts of battery, false arrest,

false imprisonment, and trespass. Plaintiffs also allege a claim against the City for violation of

the Fourth Amendment's prohibition against unreasonable search and seizure, alleging that the

City's Emergency Entries Directive is unconstitutional on its face and as applied to plaintiffs.

I.    Portland Police Bureau's Emergency Entries Directive, No. 631.60

In their Fourth Claim for Relief, plaintiffs allege the City violated their Fourth

Amendment right to be free from unreasonable search and seizure when the City authorized PPB

officers to enter plaintiffs' home without a warrant and without probable cause under PPB's

policy relating to emergency entries and the community caretaking statute. Plaintiffs continue:

> Defendant City of Portland's policy regarding emergency entries and the
> community caretaking statute, which permits Portland Police Bureau officers[']
> entry into citizens' homes without a warrant, is unconstitutional on its face and/or
> the application of that policy by defendant was unconstitutional.

Third Am. Compl. ¶ 38 (plus similar language at ¶¶ 44, 69, 75).

The Emergency Entries Directive, No. 631.60, in place at the time of the incident states:

> a. Under ORS 133.033, any sworn member may make an emergency entry
> of any premise[s], without the consent of the person in possession or entitled to
> possession thereof, if they have reasonable basis for believing the entry into the
> premise[s] is required to:

> > 1. Prevent serious harm to any person or property.

> > 2. Render aid to injured or ill persons.

Page 6 - OPINION AND ORDER

      3.  Locate missing persons.

      4.  Assist persons who are mentally incompetent/unable to care for themselves, are unaccompanied by a competent party, and may be in a situation where their welfare is at risk.

Fender Aff. Ex. 1, at 2.

      The referenced statute is the state's community caretaking statute, which reads:

      (1)  Except as otherwise expressly prohibited by law, any peace officer is authorized to perform community caretaking functions.

      (2)  As used in this section, "community caretaking functions" means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public.  "Community caretaking functions" includes, but is not limited to:

        (a)  The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:

          (A)  Prevent serious harm to any person or property;

          (B)  Render aid to injured or ill persons; or

          (C)  Locate missing persons.

        (b)  [traffic situations]

      (3)  Nothing contained in this section shall be construed to limit the authority of a peace officer that is inherent in the office or that is granted by any other provision of law.

ORS 133.033.

A.    <u>Constitutionality on its Face</u>

      The City and plaintiffs filed cross motions for partial summary judgment on whether the Emergency Entries Directive is constitutional on its face.  There are a few threshold issues to address.

The first issue is determining the correct test for analyzing whether a policy is constitutional on its face.  The City relies on United States v. Salerno, 481 U.S. 739, 107 S. Ct. 2095 (1987), in which the Court considered a facial challenge to the constitutionality of the Bail Reform Act of 1984.  The Court required the challenger to "establish that no set of circumstances exist[ed] under which the Act would be valid."  Id. at 745.  The fact that the law could operate unconstitutionally under a conceivable set of circumstances was insufficient to render the Act wholly invalid outside a limited First Amendment context.  Id.

Relying on Planned Parenthood v. Casey, 505 U.S. 833, 112 S. Ct. 2791 (1992), plaintiffs argue the standard is more flexible than what the City represents.  In Planned Parenthood, the Court employed an undue burden standard in analyzing several aspects of a Pennsylvania statute requiring various notifications and a waiting period prior to obtaining an abortion.  Id. at 876-78. Plaintiffs argue the Planned Parenthood standard applies because the Fourth Amendment provides constitutional rights of the utmost importance.  The City disagrees, arguing that Planned Parenthood is limited to abortion-rights cases.

Plaintiffs also cite City of Chicago v. Morales, 527 U.S. 41, 55 n.22, 119 S. Ct. 1849 (1999) (challenge to city's gang loitering ordinance), and Compassion in Dying v. State of Washington, 79 F.3d 790, 798 n.9 (9th Cir. 1996) (state statute prohibiting assisted suicide), rev'd on other grounds, 521 U.S. 702 (1997), for their dicta denigrating the utility of the standard announced in Salerno.  I am unpersuaded by these cases, however, because the first analyzes the vagueness of the ordinance and the second analyzes a Due Process Clause liberty argument. Neither is at stake here.  Most importantly, the Ninth Circuit has refused to replace the Salerno standard with the Planned Parenthood standard, except in the context of facial challenges to

abortion statutes. <u>S.D. Myers, Inc. v. City and Cnty. of San Francisco</u>, 253 F.3d 461, 467-68 (9th

Cir. 2001) (confirming use of <u>Salerno</u> standard in a facial challenge to ordinance requiring city

contractors to provide nondiscriminatory benefits to employees with registered domestic

partners). <u>See also</u> <u>United States v. Kaczynski</u>, 551 F.3d 1120, 1124 (9th Cir. 2009) (used

<u>Salerno</u> standard in a facial validity challenge to restitution lien statute); <u>Lanier v. City of

Woodburn</u>, 518 F.3d 1147, 1150 (9th Cir. 2008) (used <u>Salerno</u> standard in a facial validity

challenge to drug test policy).

Accordingly, I agree with the City that <u>Salerno</u> is still the law in this circuit for analyzing

a facial validity challenge outside the First Amendment context.

The next issue is to determine the correct law for analyzing the application of the

emergency doctrine, also known as the emergency aid exception. If the emergency doctrine

applies, an officer's warrantless entry into a house does not violate the Fourth Amendment.

The City argues the Court stated the relevant factors for applying the emergency doctrine

to the Fourth Amendment's warrant requirement in <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398,

126 S. Ct. 1943 (2006). Plaintiffs cite <u>United States v. Cervantes</u>, 219 F.3d 882, 888-89 (9th Cir.

2000), for the relevant factors to consider when analyzing the emergency doctrine.

Based on <u>Brigham City</u>, the Ninth Circuit revised <u>Cervantes</u> in some "critical respects" as

explained in <u>United States v. Snipe</u>, 515 F.3d 947, 951 (9th Cir. 2008). The circuit held that the

officer's subjective motivation was irrelevant in determining if the emergency doctrine applies.

The circuit also rejected any probable cause inquiry on the association of the emergency with the

place to be searched. <u>Id.</u> at 952. Instead, the circuit adopted a two-pronged test that asks

whether: "(1) considering the totality of the circumstances, law enforcement had an objectively

Page 9 - OPINION AND ORDER

reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need."  Id. I will use this test.

Plaintiffs argue the Emergency Entries Directive allows a warrantless entry in violation of the Fourth Amendment.  They claim the Directive adopts the reasons stated in Oregon's community caretaking statute, ORS 133.033, to allow warrantless entries and searches of private homes, even though some of those reasons do not fall within the emergency doctrine.  Plaintiffs cite numerous state cases to support their argument.

The City notes that plaintiffs' claim against the Directive is a federal claim brought under 42 U.S.C. § 1983.  The City argues the federal claim must be resolved by determining whether plaintiffs suffered a deprivation of *federally* protected rights.  I agree with the City and will rely on the federal standards related to the emergency doctrine outlined above and cases interpreting them.  Cf. United States v. Cormier, 220 F.3d 1103, 1111 (9th Cir. 2000) (in the criminal trial context, evidence will only be excluded in federal court if it violates federal law and not if the evidence is tainted solely under state law).

On the merits of the issue, the City argues that the Emergency Entries Directive is constitutional on its face because there are circumstances under which the Directive could be applied in a constitutional manner, namely, when an officer has a reasonable basis for believing that an emergency situation requires immediate action.  The City contends that plaintiffs fail to consider the Directive's reference to ORS 133.033 and its explicit statement that authority is given "[e]xcept as otherwise expressly prohibited by law."  In addition, the City claims the Directive expressly refers to emergency entries and requires a reasonable basis for believing entry

is required to resolve a potential emergency situation.  According to the City, the enumerated

possible emergency scenarios in the Directive are limited by the "reasonable basis" language in

the preceding paragraph.  Thus, the City contends that any overlap between the possible

emergency scenarios and the state's community caretaking statute does not mean the City has

lowered the standards required for an emergency entry.

Plaintiffs contend the Emergency Entries Directive is facially unconstitutional because it

lowers the threshold for when an entry is permitted.  In particular, plaintiffs argue that subsection

(a)(4), concerning people who are mentally incompetent or unable to care for themselves, allows

the officers to effect warrantless entries on the basis of speculation because of the phrase "may be

in a situation where their welfare is at risk."  Plaintiffs claim this language allows a warrantless

entry without requiring an immediate need for assistance to protect life.  Plaintiffs further argue

that subsection (a)(3), concerning the location of missing persons, is facially unconstitutional

because that situation does not fall within the emergency doctrine.

Plaintiffs ask me to take judicial notice of the rulings in Sandau v. Wood, No. CV07-632-

MO, 2009 WL 3429751 (D. Or. Oct. 19, 2009), which denied the City's motion for summary

judgment after concluding the Emergency Entries Directive is unconstitutional on its face.  The

court may take judicial notice of proceedings in other courts.  Trigueros v. Adams, 658 F.3d 983,

987 (9th Cir. 2011) (taking judicial notice of documents filed in state court habeas proceeding).

That is a far cry, though, from adopting a ruling of another court.  Plaintiffs may offer the rulings

in Sandau as persuasive authority, but the rulings are not binding on this court.  I find Sandau

unpersuasive, however, because the analysis does not use the Salerno standard.

Page 11 - OPINION AND ORDER

I agree with the City that the statute is limited by the constitutional concerns addressed in the emergency doctrine, as explained in Brigham City. Cf. State v. Christenson, 181 Or. App. 345, 349, 45 P.3d 511 (2002) (ORS 133.033 is limited by the limitations on warrantless searches contained in Article 1, Section 9 of the Oregon Constitution); see also ORS 133.033 ("[e]xcept as otherwise expressly prohibited by law, any peace officer is authorized to perform community caretaking functions").  In referencing ORS 133.033, the Emergency Entries Directive imports the limitations contained within the statute.

Additionally, stripped of extra verbiage, the Directive allows officers to make *emergency* entries if they have a *reasonable belief* the entry is *required* to address four situations.  I agree with the City that the four situations are limited by this language.  The emergency doctrine requires "an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm."  Snipe, 515 F.3d at 952.  My interpretation of the Directive falls within the emergency doctrine; both require an objectively reasonable belief that there is an immediate need to protect someone, in other words, an emergency.  I also note that both the emergency doctrine and the Directive require only a reasonable belief that entry is necessary, and not absolute proof.  "Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception."  Michigan v. Fisher, __ U.S. __, 130 S. Ct. 546, 549 (2009) (officer reasonably relied on emergency aid exception to enter house that had a damaged pickup truck in the driveway, damaged fenceposts on the side of the property, three broken house windows, blood drops leading to the door of the house, and a man with a cut hand inside the house screaming and throwing things).  Thus, plaintiffs' arguments that the Directive allows officers to speculate about the existence of an emergency are not persuasive.

Page 12 - OPINION AND ORDER

Plaintiffs failed to establish that no set of circumstances exist under which the Emergency Entries Directive would be valid. Accordingly, the Directive is constitutional on its face. I grant the City's motion for summary judgment and deny plaintiffs' motion for summary judgment on this issue.

B.    Constitutionality As-Applied

Plaintiffs allege the City violated their constitutional rights under the Fourth Amendment by authorizing PPB officers under the Emergency Entries Directive to enter their home without a warrant. Plaintiffs allege their rights were violated when the officers first entered the home and again when the officers searched the second floor. Plaintiffs seek summary judgment on this claim.

I will address a few issues before turning to the merits of this claim.

The City concedes that plaintiffs did not consent to the officers entering or searching either floor of plaintiffs' home. Accordingly, I grant summary judgment on the lack of consent issue.

Plaintiffs ask me to take judicial notice of the Multnomah County judge's ruling that the entry and search of Glenn's home was unconstitutional. As explained above, adopting another court's ruling is not an appropriate application of judicial notice. Plaintiffs are actually asking me to give preclusive effect to the ruling and prohibit the City from arguing otherwise. Under the Full Faith and Credit Clause and 28 U.S.C. § 1738, federal courts give state judicial proceedings the same preclusive effect the proceeding would have "under the law of the State in which the judgment was rendered." White v. City of Pasadena, 671 F.3d 918, 926 (9th Cir. 2012). Oregon law prohibits use of the state judge's findings at times, specifically:

Page 13 - OPINION AND ORDER

> Notwithstanding ORS 43.130 and 43.160, a plea, finding or judgment in a violation proceeding, or the fact that a violation proceeding has been brought against a defendant, may not be used for the purpose of res judicata or collateral estoppel, or be admitted as evidence in any civil proceeding.

ORS 153.108. The final charges Glenn faced were violations, so ORS 153.108 prevents giving preclusive effect to the state court judge's ruling in state court and the findings may not be used here. The statute is not an evidentiary rule which I can ignore, as argued by the plaintiffs.

For the emergency doctrine to apply under Snipe, the defendant must show the following: "(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." Snipe, 515 F.3d at 952. The officer's subjective motivation is irrelevant in determining if the emergency doctrine applies. Id.

There are several factual issues which prevent me from deciding this issue in a summary judgment motion. Glenn states that he did not yell and scream, did not tell the officers that they were not going upstairs, and did not physically prevent them from going upstairs by stretching his arms across the stairs. The officers, on the other hand, describe Glenn as highly angry and agitated, yelling quite loudly, and physically blocking the staircase. The fact that the officers could see that McKinney was uninjured does not mean the officers should refrain from checking the second floor for an injured person unable to make noise to draw their attention. Plaintiffs may prevail here, but a jury must first decide what happened.

Consequently, I deny plaintiffs' motion for summary judgment of liability on whether the officers applied the Emergency Entries Directive in a constitutional manner.

Page 14 - OPINION AND ORDER

II.    <u>State Tort Claims</u>

Plaintiffs allege state tort claims of trespass, battery, false arrest, and false imprisonment, and they seek summary judgment with respect to liability for these claims. Plaintiffs' arguments are based on the theory that the officers were acting unconstitutionally when they entered the home. Because a jury must decide that question, I cannot grant summary judgment on any of the state claims.

**CONCLUSION**

Defendant's Motion to Correct Exhibit 1 to the Affidavit of Charles A. Fender [45] is granted. Plaintiffs' Motion for Partial Summary Judgment [31] is granted in part. Defendant City of Portland's Motion for Partial Summary Judgment [32] is granted.

IT IS SO ORDERED.

Dated this _____27th_____ day of June, 2012.


      /s/ Garr M. King
Garr M. King
United States District Judge


Page 15 - OPINION AND ORDER