Michael L. Rosenbaum, OSB No. 760267
E-mail: mlr@rosenbaumlitigation.com
Travis J. Mayor, OSB No. 053210
E-mail: tjm@rosenbaumlitigation.com
Law Offices of Michael L. Rosenbaum
1826 NE Broadway
Portland, OR 97232
Telephone No.: (503) 288-8000
Fax No.: (503) 288-8046

      Of Attorneys for Plaintiffs Thomas Glenn and Patsy McKinney

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| THOMAS GLENN; and PATSY McKINNEY, | Case No.: 3:11-CV-00402-MO |
| | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59 |
| Plaintiffs, | |
| v. | |
| CITY OF PORTLAND, a Public body, | |
| Defendant. | |

Plaintiffs Thomas Glenn and Patsy McKinney submit the following Memorandum of Law in Support of Plaintiffs' Renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) and Alternative Motion for New Trial pursuant to Fed. R. Civ. P. 59.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR    1
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND
ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

### MEMORANDUM OF LAW

**I.     The Court should Grant Plaintiffs' Renewed Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b) on Plaintiffs' Fourth Amendment Claims.**

Plaintiffs moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) with respect to liability on their Fourth Amendment claims (both counts) at the close of defendant's case-in-chief and before the case was submitted to the jury. The court denied plaintiffs' motions and submitted the case to the jury. Plaintiffs renew their motion and respectfully request that the court direct entry of judgment as a matter of law on both counts of plaintiffs' Fourth Amendment Claims because a reasonable jury would not have a legally sufficient evidentiary basis to find for defendant City of Portland on these claims.

It was undisputed at trial that the City's police officers did not have a search warrant to enter and search plaintiffs' property, including the second floor. It was also undisputed at trial that the City's police officers did not have permission to enter and search plaintiffs' home. The City of Portland relied on the emergency aid exception to the Fourth Amendment's warrant requirement. To be constitutional, the evidence at trial had to show that: (1) considering the totality of the circumstances, the City's police officers had an <u>objectively</u> <u>reasonable</u> basis for concluding that there was an <u>immediate</u> <u>need</u> to protect others or themselves from <u>serious</u> <u>harm</u>; and (2) the search's scope and manner were reasonable to meet the need. *United States v. Snipe,* 515 F.3d 947, 952 (9th Cir. 2008) (emphasis added). Based on the evidence presented at trial, no reasonable jury would have had a sufficient evidentiary basis to conclude that the City's officers' entry and search of plaintiffs' home met this standard.

Each and every police officer witness testified that the only facts they relied on in making the warrantless entry and search of plaintiffs' home was that dispatch told them it received a 911 call from a passerby plaintiffs' home that reported she heard "slamming and a female screaming"

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR        2
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND
ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

and Mr. Glenn's refusal to allow them to enter, his demeanor and his loud voice in communicating with the officers. There were no additional factors observed or learned by any of the officers to justify the entry and search.

Based on the evidence at trial, the following facts were undisputed before and upon the officers' arrival at plaintiffs' home:

1. 911 dispatch did not get additional facts, descriptions or anything else from the 911 caller;

2. 911 dispatch did not get the caller's last name, her address or anything to verify the caller's information;

3. There were no signs of an emergency at plaintiffs' home when officers arrived;

4. The house was quiet;

5. The neighborhood was quiet;

6. There was nobody on the outside of the premises;

7. The officers did not hear slamming or screaming;

8. There were no signs of a fight or violence;

9. The officers had no prior knowledge or experience with plaintiffs' home; and

10. The address on plaintiffs' home was very faded and hard to see from the street.

Upon making contact with Mr. Glenn and Ms. McKinney, the following facts were also undisputed based on the evidence presented at trial:

1. Plaintiffs had no signs of injury;

2. Plaintiffs told the City's officers that they had been sleeping;

3. Plaintiffs' told the City's officers that they were fine and nobody was hurt or injured;

4. Neither plaintiff asked the officers for help or assistance;

5. Neither plaintiff told the officers they had been threatened, assaulted, were hurt or were in any danger;

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR     3
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND
ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

6. Not one of the City's officers had any evidence of any injured persons at plaintiffs' home;

7. The officers did not have a particular victim they were looking for;

8. The officers did not have a particular suspect who may have injured or threatened someone; and

9. One or more officers had weapons drawn on the front porch and Officer Matthews repeatedly threatened to use force to break in the door to gain entry.

Based on these undisputed facts that were presented at trial, no reasonable jury could have had a sufficient evidentiary basis to conclude that the City's officers entry and search of plaintiffs' home was constitutional under the standard required by *United States v. Snipe,* 515 F.3d 947, 952 (9th Cir. 2008).

The purported evidentiary basis to justify the City's emergency entries search of the second floor of plaintiffs' home was even more scant and completely lacking. Once the officers were inside the home and made contact with plaintiffs, and Bernard Williams, and determined that nobody was hurt, there was no objectively reasonable basis to conclude that a search of the second floor was justified to protect anyone from serious harm. It was undisputed, based on the evidence at trial, that the officers confirmed nobody inside the house was hurt or injured; they found no evidence of injury; they found no evidence of violence; the officers were told nobody else was inside the home; the officers were told everyone had been sleeping that morning; there were no sounds coming from the second floor; and none of the officers called out up the stairs to see if anyone on the second floor would respond. After gaining access to the house, seeing the inside and making contact with the only people there, the officers knew more than they did before they entered. They had verified that everyone was okay and that there were no signs of violence having occurred anywhere.

Furthermore, the evidence at trial was that none of the officers interviewed Ms.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59    4

McKinney about what had happened, whether she was okay, or if she had been threatened or hurt. The evidence was that none of the officers took Ms. McKinney aside once inside the house to assess her. The 911 call was about a "female screaming" but the evidence showed that none of the police officers showed any concern for Ms. McKinney who was the only female in the house. Accordingly the evidence does not meet the requirements needed for a jury to find that the officers' conduct was constitutional under the emergency aid exception to the warrant requirement as required under *United States v. Snipe,* 515 F.3d 947, 952 (9th Cir. 2008).

For these reasons, the court should grant plaintiffs' renewed motion for judgment as a matter of law on plaintiffs' Fourth Amendment claims.

## II.     The Court should Grant Plaintiffs' Renewed Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b) on Plaintiffs' Trespass Claims.

Plaintiffs moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) with respect to liability on their state common law trespass claims (both counts) at the close of defendant's case-in-chief and before the case was submitted to the jury. The court denied plaintiffs' motions and submitted the case to the jury. Plaintiffs renew their motion and respectfully request that the court direct entry of judgment as a matter of law on both counts of plaintiffs' trespass claims because a reasonable jury would not have a legally sufficient evidentiary basis to find for defendant City of Portland on these claims.

Under Oregon law, a trespass arises when an entry on the land of another disturbs the possessor's interest in the right to exclusive possession of the land. It was undisputed at trial that plaintiffs proved each element of their trespass claims. The only issue for the jury was whether defendant's conduct was somehow justified. Article I, Section 9 of the Oregon Constitution requires the police to obtain a warrant before conducting searches unless a recognized exception to the warrant requirement applies. *See, e.g., State v. Stevens,* 311 Or. 119, 126, 806 P.2d 92

(1991). Under Oregon law, defendant had the burden of proving that an exception to the warrant requirement existed and applied. *Id.*

As previously stated, it was undisputed at trial that the City's officers did not have a warrant to enter or search plaintiffs' home on the morning of August 12, 2008 and it was also undisputed that the officers did not have plaintiffs' consent to enter and search their residence, including the second floor. At trial, the City invoked the emergency aid exception to the warrant requirement contained in Article I, Section 9 of the Oregon Constitution as its defense to plaintiffs' state common law trespass claims.

The emergency aid doctrine under Oregon law is an exception to the warrant requirement. *State v. Bridewell,* 306 Or. 231, 236, 759 P.2d 1054 (1988). However, Oregon's emergency aid doctrine requires a "<u>true emergency</u>." *State v. Christenson,* 181 Or. App. 345, 352, 45 P.3d 511, 514 (2002) (emphasis added). In *State v. Follett,* the court stated that the emergency aid doctrine applies when the following four criteria are met:

> (1) The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.
>
> (2) The emergency must be a true emergency – the officer's good faith belief alone is insufficient.
>
> (3) The search must not be primarily motivated by an intent to arrest or to seize evidence.
>
> (4) The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency.

115 Or. App. 672, 680, 840 P.2d 1298 (1992).

Based on the evidence presented at trial, no reasonable juror could have concluded that the City's officers had reasonable grounds to believe there was a "<u>true emergency</u>" and an immediate need for their assistance for the "protection of life." A true emergency exists only if:

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR       6
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND
ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

> There are reliable, objective indicia of a potential victim of a dangerous circumstances or a potential perpetrator of a dangerous act. Suspicious circumstances or 'gut instinct' are insufficient. The existence of an identifiable victim or perpetrator is significant because whether an emergency exists depends on whether immediate action is required ('something that will alleviate the emergency'), which, in turn, depends on the relationship between the gravity of the harm to be prevented and the probability that the harm will occur if action is not taken.

*State v. Fredricks,* 238 Or. App. 349, 358, 243 P.3d 97 (2010) (quoting *State v. Burdick,* 209 Or. App. 575, 581, 149 P.3d 190 (2006)).

Based on the aforementioned, and the evidence presented at trial, no reasonable juror could have concluded that defendant met is burden by proving that there were reliable, objective indicia of a "true emergency" to justify the warrantless entry and search made by its officers under Oregon's emergency aid exception to the warrant requirement in Article I, Section 9 of the Oregon Constitution under both counts of plaintiffs' trespass claims. For these reasons, the court should grant plaintiffs' renewed motion for judgment as a matter of law on plaintiffs' state common law trespass claims.

**III.  The Court should Grant Plaintiffs' Renewed Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b) with respect to Medical Causation and Past Medical Expenses regarding Thomas Glenn's Injured Right Foot.**

Plaintiff Thomas Glenn moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) with respect to the issue of medical causation and past medical expenses regarding his injured right foot at the close of defendant's case-in-chief and before the case was submitted to the jury. The court denied plaintiff Glenn's motion and submitted the case to the jury. Plaintiff Thomas Glenn renews his motion and respectfully requests that the court direct entry of judgment as a matter of law on these issues because a reasonable jury would not have a legally sufficient evidentiary basis to find for defendant City of Portland on these issues.

///

In plaintiffs' case-in-chief, Dr Jared Remmers, DPM testified regarding medical causation with respect to Mr. Glenn's injured right foot.  Dr. Remmers also testified that Mr. Glenn's past medical expenses of $36,374.77 were incurred by Mr. Glenn, were reasonable in amount and were necessarily incurred for treatment of injuries to Mr. Glenn's right foot arising from the subject incident with the City's police officers.  (Remmers' testimony; Plfs' Exhibits 18-24).  Dr. Remmers was Mr. Glenn's treating podiatrist and designated expert medical witness. Dr. Remmers testified that in his opinion, based on a reasonable medical probability, Mr. Glenn's injuries and conditions were caused by Officer Matthews.  Dr. Remmers opined Officer Matthews conduct and Mr. Glenn's initial injury were substantial factors for all of Mr. Glenn's current conditions and symptoms, including nerve pain and other chronic problems.  He testified but for the initial injury caused by Officer Matthews, Mr. Glenn would not have suffered any of his other symptoms and conditions.

Defendant City of Portland did not oppose Dr. Remmers' expert medical opinion testimony.  Defendant did not call its own expert medical witness to controvert Dr. Remmers' opinions.  The issues of medical causation and past medical expenses went unopposed.  For these reasons, no reasonable juror could have decided against Mr. Glenn and in favor of the City on these issues based on the evidence introduced and admitted at trial.  Thus, plaintiff Glenn's renewed motion for judgment as a matter of law on these issues should be granted.

///

///

///

///

///

**IV.    In the Alternative, the Court should Grant Plaintiffs' Motion for a New Trial under Fed. R. Civ. P. 59.**

Plaintiffs Thomas Glenn and Patsy McKinney move for a new trial pursuant to Fed. R. Civ. P. 59. Under Rule 59(a)(1), "The court may, on motion, grant a new trial on all or some of the issues-and to any party-as follows:

> (A)  after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"

Reasons previously given by federal courts for granting a motion for a new trial under Rule 59 include claims "that the verdict is against the weight of the evidence; that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007). For the following reasons, plaintiffs' alternative motion for a new trial should be granted because the trial was not fair to plaintiffs.

**A.    Exclusion of Pete Sandrock Testimony and Plaintiffs' Exhibits 13 and 14**

Plaintiffs were unfairly prejudiced when the court excluded the majority of the testimony of Pete Sandrock and limited him to testifying only as to the reason why the Independent Police Review Division did not pursue plaintiffs' unlawful entry allegation. Plaintiffs were also unfairly prejudiced when the court excluded the admission of plaintiffs' exhibits 13 and 14, which were documents authored by Pete Sandrock, an employee of defendant City of Portland. Those exhibits contained party admissions by Mr. Sandrock directly relevant to the legality of the police officers' entry and search of plaintiffs' home.

By excluding witness Pete Sandrock from testifying, plaintiffs were left with no one to counter the testimony of defendant's police practices expert, Phil Zerzan, who testified that everything the City's officers did was consistent with proper police practices, i.e., the implication that their conduct was lawful. Indeed, during closing argument, defense counsel argued that

everything that was done by the City's officers from the entry into the house, the use of force, the arrests, etc. was okay and reasonable because it was consistent with what witness Phil Zerzan testified he would have his police officers do and he would have allowed it under the same circumstances.

In allowing Phil Zerzan to testify for the defense, it was absolutely necessary for plaintiffs to be able to have Pete Sandrock testify about the specific police conduct in question. Pete Sandrock is a lawyer and was the District Attorney for Benton County for 22 years prior to becoming the Assistant Director of the Independent Police Review Division ("IPR"). As Assistant Director for IPR, his job was to review citizen allegations of police misconduct by Portland Police Bureau officers. As part of his job for the City of Portland, Mr. Sandrock reviewed misconduct allegations and drew conclusions as to whether or not the conduct complied with local rules, policies and state and federal laws. He also made factual findings applying the facts to the law.

In this particular case, Mr. Sandrock's conclusion was that the conduct of the City's officers was likely unconstitutional. In their offer of proof, plaintiffs indicated that Mr. Sandrock would support those conclusions and opinions by his summary of the facts of the case, the review of his findings and the application of the facts to the appropriate state and federal law governing emergency entries. He would have also testified that he was aware of numerous citizen complaints about the City's Officers making warrantless entries and searches under the City's emergency entries policy (Plfs' Ex. 2) and he was aware there had been a slow creep over time of the PPB misusing that policy and Oregon's community caretaking statute in an unconstitutional manner. His opinion, being very experienced with the Fourth Amendment, was that the conduct in this case was inconsistent with the requirements of the Fourth Amendment,

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR      10
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND
ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

but was consistent with a pattern of police conduct by the City's officers, which had been slowly eroding citizens' rights to be free from unreasonable searches.

### B. Allowing Witness Phil Zerzan to Testify

Plaintiffs were also unfairly prejudiced when the court allowed defendant's police practices expert Phil Zerzan to testify. Plaintiffs' hereby incorporate by reference Plaintiffs' Daubert Motion against Phil Zerzan in support of their argument. What someone may think is or is not proper police practices should not dictate what is lawful. It should be the other way around. In other words, police practices should be judged by whether or not the conduct is lawful. In effect, in this case, the City was allowed to argue based on the testimony of Phil Zerzan that what was done here was "appropriate", i.e., lawful because it was consistent with what Phil Zerzan would have had his men do if he were a police supervisor. It is the jury's function to determine whether or not the police were following the law in this case. It is not for Phil Zerzan to determine whether they were following the law. For this reason and the reasons set forth in Plaintiffs' Daubert Motion, Phil Zerzan's testimony should have been excluded. By not excluding his testimony, plaintiffs were unfairly prejudiced.

### C. Exclusion of Pete Sandrock and Inclusion of Phil Zerzan

Allowing Phil Zerzan to testify and at the same time not allowing Pete Sandrock to testify or admit Plaintiffs' Exhibits 13 and 14 was extremely prejudicial in combination. This is so because it left unrebutted the assumption that what Phil Zerzan testified that what happened in this case was appropriate police conduct was fully within the bounds of the law. In doing so, Phil Zerzan was allowed to set the standards by which the jury would judge the conduct of the police in this case. Indeed in closing argument, defense counsel argued that Phil Zerzan would have allowed his men to do what the City's officers did in this case. Defense counsel argued that

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR      11
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND
ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59

Phil Zerzan would have allowed the entry into plaintiffs' home based on the 911 call alone. This is clearly illegal. No case law suggests that a 911 call of this type alone, with nothing more, could be the basis for an emergency entry under the emergency aid exception to the warrant requirement, although the jury was left to assume otherwise. Accordingly, plaintiffs should be given a new trial because this trial was not fair for the reasons stated above.

Dated this 18th day of March, 2013.

                LAW OFFICES OF MICHAEL L. ROSENBAUM

By: */s/ Travis J. Mayor*
Michael L. Rosenbaum, OSB No. 760267
Travis J. Mayor, OSB No. 053210
Ph: (503) 288-8000
Fx: (503) 288-8046
 Of Attorneys for plaintiffs Thomas Glenn and Patsy McKinney

## CERTIFICATE OF SERVICE

I hereby certify that I served, on the date set forth below, the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b) AND ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59 via the following method on:

William Manlove III
City Attorney's Office
1221 SW 4th Ave., Suite 430
Portland, OR 97204
William.Manlove@portlandoregon.gov

By electronic service via CM/ECF.

DATED this 18th day of March, 2013.

                                                            */s/ Travis J. Mayor*
                                                            Travis J. Mayor